### 43747. WILLIAMS v. THE STATE.
(352 SE2d 756)

HUNT, Justice.

Thomas Nat Williams was convicted of the felony murder of Milton Woodson, the aggravated assault of Sammy Woodson, and

possession of a firearm in the commission of a felony. He received a life sentence with 10 years to be served concurrently for the aggravated assault and three years probation for the firearms violation.[1] He appeals raising the general grounds and several special grounds involving the prosecutor's argument and the charges regarding felony murder and self-defense, and whether a policeman was properly allowed to testify without first being qualified as an expert in firearms. We affirm.

The victims, Sammy and Milton Woodson, were brothers who, in the late afternoon of New Year's Day 1985, went to a liquor store near the intersection of Bankhead Highway and Hightower Road in Atlanta, where they purchased a bottle and sat on some steps in a vacant lot sharing its contents and talking. The brothers then went to the Oil Mart, a convenience store and gas station to get change to ride the bus to their sister's home on Bolton Road.

A little earlier that evening, the defendant and his wife had stopped at the Oil Mart for gas. While the defendant was filling the tank and paying for the gas, he heard his wife scream. A man they did not know, and whom they admitted was not either of the victim brothers, stepped back from the car apologizing that he was supposed to meet a woman in an orange Camaro and had mistaken their car for hers. The defendant testified that this man then rejoined a group of men, which he claims included the victims, in the parking lot.

The defendant and his wife had been at that time on their way to another house on Campbellton Road, but after this incident they returned to his parents' home where the defendant related these happenings to his father. He and his wife then proceeded back to the Oil Mart in his Camaro. His father and sister followed in a van. Before reaching the Oil Mart, the defendant flagged a policeman, and told him the story. That policeman was on his way to an emergency, but he radioed for another officer to meet the defendant at that same spot and instructed the defendant not to return to the Oil Mart alone.

The defendant waited a few minutes, but when no officer arrived he left for the Oil Mart, followed by his father in the van and a friend in a third car. His arrival there coincided with that of the victims.

At the Oil Mart, the events that led up to the actual argument are in sharp dispute, but the jury was authorized to find that the defendant and the victim brothers entered into an argument which included shouting and cursing and physical contact, that the defend-

---

[1] The incident occurred in Fulton County on January 1, 1985. The defendant was indicted on February 22, 1985, and tried and convicted by a jury in a four-day trial beginning on September 30, 1985. His motion for new trial was filed on November 4, 1985, amended on May 28, 1986, and overruled on May 29, 1986. His notice of appeal was filed on June 10, 1986, and the case was docketed here on July 31 and argued on October 14, 1986.

ant's sister may have tried to intervene but was drawn into the fight, that the defendant retreated, that he reappeared with his mother's gun (which he had either obtained earlier at his parents' house or from the van) and shot the two brothers from a distance of at least seven feet. Milton went into the convenience store where he collapsed and died. Sammy lay on the ground, but recovered after surgery.

1. Having reviewed the evidence in the light most favorable to the jury's determination, we conclude that a rational trier of fact could have found the defendant guilty of the crimes of which he was convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The defendant also enumerates as harmful error the trial court's allowing a police officer to testify about the condition of a bullet without having first been qualified as an expert. Pretermitting whether or not the defendant's objection was timely, we find no reversible error. The police officer was testifying about the condition of the gun and shells that he had received from a fellow officer and placed in an exhibit bag to send to the State Crime Lab. In doing so, he sought to identify the gun and bullets as those which he had in fact received and passed on to the lab and explained that he recognized one unfired bullet which had a mark on it indicating it had misfired. Since this evidence was cumulative of that of the State Crime Lab ballistics expert, the error, if any, was harmless. See *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976).

3. The defendant also raises the propriety of a charge on felony murder under *McCrary v. State*, 252 Ga. 521 (314 SE2d 662) (1984), claiming he had no notice in the indictment of the underlying felony, aggravated assault, to support felony murder. This enumeration is without merit since the indictment charges that the defendant "cause[d] the death of Milton Lamar Woodson, a human being, *by shooting him with a pistol . . .*" (Emphasis supplied.) *Jolley v. State*, 254 Ga. 624, 627 (331 SE2d 516) (1985); *Fraley v. State*, 256 Ga. 172, 173 (345 SE2d 344) (1986).

4. In his final enumeration of error, the defendant contends that the trial court improperly allowed the district attorney to argue to the jury in his closing argument that self-defense is not applicable to felony murder and that the trial court's charge confused the jury, thus compounding this error. In fact, the trial court did not charge the jury on this specific point, but only charged that self-defense was a defense to any of the charges against the defendant. The defendant claims this confusion harmed him because the jury, by finding him guilty of felony murder, necessarily acquitted him of malice murder, believing he acted in self-defense. He contends that because the jury was told self-defense was not a defense to felony murder, he was

found guilty of this crime. We disagree.[2]

Although it is true that self-defense is not a defense to felony murder, it is a defense to the underlying felony. Where the defendant acts in self-defense, the jury is not permitted to find him guilty of the underlying felony and the defendant accordingly cannot be found guilty of felony murder. Looking at the charge as a whole, it was clear to the jurors that, if they believed the defendant had acted in self-defense, he should be acquitted.

The district attorney in his argument was explaining that self-defense is unavailable as a defense where the defendant is committing a felony or fleeing from the commission of a felony or when he is the aggressor. In that context, the district attorney also made the true statement that self-defense is not a defense to felony murder. We do not find either the district attorney's argument or the trial court's charge to be in error or confusing. Therefore, this enumeration of error presents no ground for reversal.

It also follows that the trial court did not err in failing to recharge the jury on justification and self-defense at the defendant's request on the same grounds argued above.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 13, 1987.

*L. James Weil, Jr., Sheila R. Tyler, John Thomas Chason,* for appellant.

*Lewis R. Slaton, District Attorney, Benjamin H. Oehlert III, Assistant District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr., Assistant Attorney General,* for appellee.

---

[2] This hypothesis is clearly incorrect because the jury did find the defendant guilty of the aggravated assault of Sammy Woodson despite the same self-defense claim.