S92A0232. THE STATE v. PATILLO.
(417 SE2d 139)

HUNT, Justice.

We granted this interlocutory appeal to determine whether the trial court was correct in ruling that in a trial on the issue of the defendant's mental retardation pursuant to *Fleming v. Zant,* 259 Ga. 687 (386 SE2d 339) (1989), the consequences of the jury's finding on the retardation issue should not be disclosed to the jury.

In 1988, we affirmed Patillo's conviction and death penalty. *Patillo v. State,* 258 Ga. 255 (368 SE2d 493) (1988). On July 1, 1988, OCGA § 17-7-131 (j), providing that a defendant found guilty but mentally retarded may not be sentenced to death, became effective. The following year, we held in *Fleming* that the execution of mentally retarded offenders violates the state constitutional guarantee against cruel and unusual punishment. We set out the procedure to be followed where a person sentenced to death before July 1, 1988, alleges in a petition for habeas corpus that he or she is mentally retarded. If a state habeas corpus petitioner under a death sentence presents "sufficient credible evidence . . . to create a genuine issue regarding . . . retardation," then the habeas court must grant the writ and re-

turn the case to the trial court "for the limited purpose of conducting a trial on the issue of retardation only." *Fleming*, supra at 691. Patillo's case was returned to the trial court under this procedure. The trial on the issue of Patillo's retardation was delayed pending our decision in *Zant v. Foster*, 261 Ga. 450 (406 SE2d 74) (1991). Thereafter, the trial court ruled in favor of Patillo's motion in limine seeking to prohibit the jury from learning that his death sentence would be vacated and a life sentence imposed if he were found to be mentally retarded.

The state appeals, contending that in order to test the credibility of experts and others who will offer opinion evidence about Patillo's mental capacity, the state should be permitted to cross-examine those witnesses about their personal beliefs concerning the death penalty and about their personal interests in the penalty which may be imposed. Patillo responds that the credibility of his witnesses may adequately be evaluated without diverting the jury's attention away from its duty to decide objectively the issue of mental retardation by injecting issues about the appropriateness of a death penalty.

We note that in trials under OCGA § 17-7-131 (j), the issue of mental retardation is decided at the guilt phase of the trial. At this phase of the trial, it is "generally accepted" that prosecutors should not " 'divert the jury from its duty to decide the case on the evidence . . . by making predictions of the consequences of the jury's verdict.' [Cit.]" *Walker v. State*, 254 Ga. 149, 158 (14) (327 SE2d 475) (1985). Insofar as mental illness and mental retardation are concerned, the jury *is* instructed that if it finds the defendant guilty but mentally retarded or mentally ill, "the defendant will be given over to the Department of Corrections or the Department of Human Resources, as the mental condition of the defendant may warrant." OCGA § 17-7-131 (b) (3) (C). See *Spraggins v. State*, 258 Ga. 32 (364 SE2d 861) (1988). This limited exception to the general rule proscribing consideration of the consequences of a guilty verdict is intended to increase reliability by correcting any possible erroneous conception on the jury's part that a verdict of guilty but mentally ill or mentally retarded would result in the immediate release of the defendant. Thus, the jury can focus strictly on the mental condition of the defendant and decide that issue without being concerned about the consequences of its finding. The jury is *not* instructed, however, that a verdict of guilty but mentally retarded will preclude a death sentence. Such an instruction could divert the jury's attention and inject considerations inappropriate at the guilt phase of the trial.

It may be true, as the state contends, that the consequences of the jury's verdict in a *Fleming* trial on mental retardation are not irrelevant to an evaluation of the credibility of the defendant's witnesses. For example, if a mental health expert, conscientiously op-

posed to the death penalty knows that the death sentence in this case will be vacated if Patillo is found to be mentally retarded, the expert's opposition to the death penalty might — consciously or unconsciously — affect his testimony and conclusions. But, as we have recognized, relevant evidence may sometimes be excluded where its probative value is small and the risk of prejudice great. See *Hicks v. State*, 256 Ga. 715 (13) (352 SE2d 762) (1987). We note that in cases tried under OCGA § 17-7-131 (j), the state has not felt it necessary to inject an issue of the consequences of a verdict of guilty but mentally retarded in order to test the credibility of defense witnesses. See, e.g., *Stripling v. State*, 261 Ga. 1 (3) (401 SE2d 500) (1991). We agree with the defendant (and the trial court) that ordinarily the jury may adequately evaluate the credibility of witnesses for either the defense or the state without the injection of the issue of the consequences of the jury's verdict. Thus, absent exceptional circumstances not present here, witnesses in a *Fleming* trial should not be examined or cross-examined in such a manner as to inject sentencing issues into the case, and the jury should not be informed that if it finds the defendant mentally retarded, his death sentence will be vacated.[1]

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 11, 1992.

*Willis B. Sparks III, District Attorney, Thomas J. Matthews, Robin O. Flanders, Assistant District Attorneys, Michael J. Bowers, Attorney General,* for appellant.

*Christina L. Hunt,* for appellee.

---

[1] It follows from the foregoing that, except in exceptional circumstances, it will not be necessary or appropriate to qualify the jury under *Witherspoon v. Illinois*, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968) and *Wainwright v. Witt*, 469 U. S. 412 (105 SC 844, 83 LE2d 841) (1985). To the extent *Zant v. Foster*, 261 Ga., supra at 451 (4) suggests otherwise, it is overruled.