S99A1800. FOSTER v. THE STATE.
(525 SE2d 78)

HUNSTEIN, Justice.

Timothy Tyrone Foster was convicted and sentenced to death by a jury in Floyd County in 1987. His conviction and sentence were

upheld on appeal. *Foster v. State*, 258 Ga. 736 (374 SE2d 188) (1988). Subsequently, this Court addressed Foster's claim seeking a writ of habeas corpus on the basis that he was mentally retarded. *Zant v. Foster*, 261 Ga. 450 (406 SE2d 74) (1991). Pursuant to our remand of the case, the trial court conducted a trial on the mental retardation issue. A jury determined that Foster was not mentally retarded and he filed this appeal. Finding no reversible error in the enumerations he asserts, we affirm.

1. Based on our prior ruling in his case, Foster had the burden of proving his mental retardation by a preponderance of the evidence. Id. at (5). See also *Stephens v. State*, 270 Ga. 354 (2) (509 SE2d 605) (1998). Evidence was adduced from which the jury could have found that IQ tests administered to Foster when he was ten and nearly seventeen years old showed that he was not mentally retarded; that Foster's subsequently lower IQ scores resulted from depression or malingering; that Foster's school grades and class assignments did not reflect any sign of mental retardation; and that Foster's interaction with others, his letter writing, newspaper reading, and sports activities all indicated that Foster did not meet the statutory definition of mental retardation. OCGA § 17-7-131 (a) (3). Construing the evidence in favor of the verdict, a rational trier of fact could have found that Foster failed to prove by a preponderance of the evidence that he was mentally retarded. Accordingly, the trial court did not err by denying Foster's motion for a new trial on the basis that the verdict was contrary to the evidence.

2. We find no error in the trial court's denial of Foster's motion for a change of venue in the mental retardation trial. Even applying the standard for change of venue in death penalty cases, see, e.g., *Cromartie v. State*, 270 Ga. 780 (2) (514 SE2d 205) (1999), a review of the record establishes that Foster made no substantive showing of an inherently prejudicial trial setting or actual bias on the part of individual jurors. Id.

3. Foster contends the trial court erred by introducing into the proceeding the fact that a crime had been committed when the trial court instructed the jury, inter alia, that Foster had been charged with a crime and that the jurors had not been selected to decide his guilt or innocence. In *State v. Patillo*, 262 Ga. 259 (417 SE2d 139) (1992), we upheld the trial court's ruling that the consequences of the jury's finding on the mental retardation issue should not be disclosed to the jury. Our holding paralleled the exclusion of sentencing issues in trials conducted pursuant to OCGA § 17-7-131 (j), under which claims of mental retardation are decided "at the guilt phase of the [criminal] trial." *Patillo*, supra. The challenged instructions here, which alerted the jury to the fact that the mental retardation issue in Foster's case arose out of a criminal proceeding, did not in any man-

ner impede the jury from "focus[ing] strictly on the mental condition of the defendant and decid[ing] that issue without being concerned about the consequences of its finding." *Patillo*, supra at 260. Accordingly, we find no error in the challenged instructions.

4. The record reveals that each panel of prospective jurors was required to complete a questionnaire and that the completed forms were then copied and provided to counsel prior to voir dire. Our review of the record fails to disclose any abuse of the trial court's discretion in regard to the amount of time counsel was provided to review the questionnaires. See generally *Speed v. State*, 270 Ga. 688 (7) (512 SE2d 896) (1999) (control of voir dire lies within discretion of trial court).

5. The trial court overruled Foster's objection under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986) after concluding that the State set forth racially neutral reasons for striking three prospective African-American jurors.[1] Foster contends that the striking of prospective juror Shropshire on the basis of his extensive medical knowledge was improper because the State failed to strike a similarly-situated white juror who was a medical nurse. However, the prosecutor also noted that juror Shropshire's wife was a psychologist who worked in the field of mental retardation, the juror had worked with her in the past regarding her patients, and additionally that the juror had a relative who was mentally retarded. The transcript thus reflects that Foster, as the opponent of the strike, failed to carry his burden of persuasion by showing that the strike was pretextual. Compare *Jones v. State*, 270 Ga. 25 (2) (505 SE2d 749) (1998).

6. Dr. Anthony Stringer, a psychologist called by Foster, testified on direct examination regarding his diagnosis of Foster's father as mentally retarded and the studies which indicated the greater likelihood of mental retardation in the offspring of retarded parents. On cross-examination, objection was made when the prosecutor questioned Dr. Stringer about anti-social personality disorder[2] on the basis that it was not relevant to the witness' direct testimony. Although the prosecutor stated that she intended to establish the relevancy by testimony that anti-social personality disorder, like mental retardation, can be inherited from a parent, that connection was not made. Foster now contends reversible error resulted. However, Dr. Stringer's testimony regarding anti-social personality disor-

---

[1] Foster does not challenge the striking of prospective jurors Crowder and Ragland and we agree with the trial court that the prosecutor presented racially neutral reasons for striking these jurors, i.e., Crowder claimed she would have a heart attack if forced to serve; and Ragland slept through voir dire and had a grandson charged in a drug case.

[2] Dr. Stringer concurred in the layperson's definition of an anti-social personality as "a person who engages in habitual criminal conduct."

der was cumulative of relevant testimony by other expert witnesses who discussed the disorder in regard to Foster himself and thus the error, if any, was harmless. See *Williams v. State*, 256 Ga. 655 (2) (352 SE2d 756) (1987); see also *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976).

7. Foster called Dr. Robert Shaffer to testify regarding the results of intelligence testing he performed on Foster. Foster contends reversible error occurred when Dr. Shaffer on cross-examination was twice asked to give his opinion based upon the opinion of another health professional. In the first instance, the prosecution questioned Dr. Shaffer about the observation by Dr. Perri, who had administered an earlier IQ test to Foster, that Foster seemed depressed at the time he took the test. The second instance involved the diagnosis of Foster as having anti-social personality disorder. Contrary to Foster's contention, the transcript reveals that the prosecution did not ask Dr. Shaffer to offer an opinion about another's opinion, but only inquired about depression and the diagnosis of anti-social personality disorder to obtain Dr. Shaffer's analysis of the impact these matters might have on the results of Foster's IQ tests. The trial court allowed this questioning as relevant to the jury's determination of Foster's mental retardation and we find no abuse of the court's discretion. See generally *Baker v. State*, 246 Ga. 317 (3) (271 SE2d 360) (1980).

8. The transcript does not support Foster's claim that the trial court either improperly restricted the answer of a witness or expressed an opinion in violation of OCGA § 9-10-7.

9. Because we found no error in the jury being informed that their consideration of the mental retardation issue arose in the context of criminal proceedings brought against Foster, see Division 3, supra, the trial court did not err by admitting testimony by State's witness, Dr. Perri, that Foster's depression during the admission of an IQ test may have stemmed in part from his incarceration at that time. Likewise, no error resulted merely because Foster's incarceration was indicated by the fact that correctional officers, called to testify regarding Foster's behavior while incarcerated, wore their uniforms in court.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 18, 2000 —
RECONSIDERATION DENIED FEBRUARY 11, 2000.

*Stewart, Melvin & Frost, J. Douglas Stewart,* for appellant.
*Tambra P. Colston, District Attorney, Thurbert E. Baker, Attor-*

*ney General, Susan V. Boleyn, Senior Assistant Attorney General, Paige R. Whitaker, Assistant Attorney General,* for appellee.