S03A0049. MORRISON v. THE STATE.
(583 SE2d 873)

FLETCHER, Chief Justice.

In 1987, Ernest Ulysses Morrison pled guilty to the rape, armed robbery, and murder of a Richmond County woman. He was sentenced to death for the murder after a sentencing trial. His convictions and sentences were affirmed on appeal.[1]

During habeas corpus litigation, Morrison alleged that he is mentally retarded. Georgia law forbids the execution of mentally

---

[1] *Morrison v. State*, 258 Ga. 683 (373 SE2d 506) (1988).

retarded persons.[2] The habeas court remanded his case for a trial to determine whether he is mentally retarded under the procedures outlined by this Court in *Fleming v. Zant*.[3] The jury in Morrison's 1999 mental retardation trial found him to be not mentally retarded, and he appeals. Finding no error, we affirm.

1. In his *Fleming v. Zant* trial, Morrison had the burden of proving he is mentally retarded by a preponderance of the evidence.[4] At trial, the state presented evidence of a prior crime that Morrison had committed in South Carolina in 1986, as well as evidence of the 1987 crime in Georgia for which Morrison was sentenced to death.

The evidence of Morrison's prior crime showed that in November 1986 he met a store owner named Cleo Southerland in South Carolina. A few days later, Mr. Southerland invited Morrison to stay with him and his wife in their home, where Morrison performed various odd jobs for the couple. After allowing Morrison to stay in their home for a few days, Mr. Southerland told Morrison that he would have to get a job or leave. Morrison waited until Mr. Southerland left for work that day and then tried to persuade Mrs. Southerland to allow him to stay. When that failed, Morrison attacked Mrs. Southerland. He stabbed her, bound her with duct tape, raped her, and stole her car, jewelry, money, and television. During the attack, Morrison also subdued Mrs. Southerland's elderly mother with duct tape, a clock cord, and plastic bags. Before fleeing, Morrison cut the phone line to the house. Morrison then drove to Ohio, removed the car's license tag, pawned the stolen items, and was arrested. Shortly thereafter, Morrison escaped from jail in South Carolina.[5]

In January 1987, Morrison appeared in Augusta, Georgia at the doorstep of a man formerly married to his aunt and told him he needed a place to stay because his mother had died in a car accident. The man let him stay for a couple of days, but then told Morrison that he would have to get a job. After the man left, Morrison attacked the man's wife and tried to tie her up with duct tape and a scarf. He raped her and choked her to death. Morrison fled after stealing her pocketbook, jewelry, chain saws, and car. He was arrested in Tennessee, in possession of some of these items, although he had already sold some of the stolen items to finance his travels. At the time of his arrest, Morrison told the police his name was "Terry Cole."

The State also presented evidence of testing that showed Morrison to have achieved IQ scores of 83 in 1996, 76 in 1987, and 70-79 in

---

[2] OCGA § 17-7-131 (j).

[3] 259 Ga. 687, 691 (386 SE2d 339) (1989).

[4] See *Foster v. State*, 272 Ga. 69, 70 (1) (525 SE2d 78) (2000).

[5] The details of Morrison's escape from the South Carolina jail were not presented to the jury.

1982. The generally accepted IQ score for an indication of mental retardation is 70 or below.[6] Under Georgia law, " 'mentally retarded' means having significantly subaverage general intellectual functioning resulting in or associated with impairments in adaptive behavior which manifests during the developmental period."[7] Morrison attended school until about the ninth grade and his school and juvenile records, although replete with instances of antisocial behavior and truancy, are devoid of any indication that authorities suspected he might be mentally retarded.

Construing the evidence in favor of the verdict, a rational trier of fact could have found that Morrison failed to prove by a preponderance of the evidence that he is mentally retarded. Therefore, the trial court did not err by denying his motion for a new trial.

2. Morrison's first three enumerations of error concern the admission of evidence related to his crimes. Morrison complains that the trial court erred by admitting the facts related to the crimes, the transcript of his confession to the Georgia crime, and the photographs of the Georgia crime scene. He argues that such evidence was irrelevant to the issue of whether he is mentally retarded and that its prejudicial nature distracted the jury.

We have determined, however, that evidence of a defendant's crimes in a mental retardation trial may be admissible as probative evidence of the defendant's intelligence if that evidence demonstrates his mental ability and adaptive skills, or is otherwise relevant to the question of whether he is mentally retarded.[8] The evidence in this case showed that Morrison gained the confidence of two different couples and persuaded them to invite him into their homes. In both cases he waited until the men left the house and then subdued the women using duct tape, plastic bags, a clock cord, and a scarf. He searched both houses and took items of value which he sold to finance his attempts to escape. In the South Carolina case, he tried to delay detection by cutting the phone line before leaving. He navigated interstate highways without the use of a map and removed the license tag on the first stolen car to avoid detection. When he was arrested in Tennessee after the murder in Georgia, he provided the police with an alias because he knew they were looking for "Ernest Morrison." These facts show an ability to plan, think, and adapt in a manner inconsistent with Morrison's claim that he is mentally retarded.

---

[6] See *Stripling v. State*, 261 Ga. 1, 4 (401 SE2d 500) (1991).

[7] OCGA § 17-7-131 (a) (3).

[8] See *Zant v. Foster*, 261 Ga. 450, 451-452 (406 SE2d 74) (1991) overruled on other grounds by *Patillo v. State*, 262 Ga. 259, 261, n. 1 (417 SE2d 139) (1992); *Livingston v. State*, 264 Ga. 402, 406 (3) (444 SE2d 748) (1994).

Morrison's confession to the Georgia crime is relevant to his intellectual abilities because it reveals that he can read and write, that he attended school until the ninth grade, and that he understood his rights. In the confession, he described his thoughts, intentions, actions, and plans during and after the crime, including his plan to escape through Ohio to Canada after the Georgia murder, using language consistent with average intelligence.

Morrison also alleges that the trial court erred by allowing a police officer to read Morrison's confession into evidence because the officer is more educated and articulate than Morrison and the officer's rendering may have differed from the way Morrison actually confessed. The record shows that the audiotape of Morrison's confession, which was admitted at his 1987 trial, had been lost in the interim. The prosecutor intended for another prosecutor to read Morrison's responses into evidence during his direct examination of the officer who took the confession, but Morrison objected to an "educated lawyer" reading his portion of the transcript and requested instead that the officer read it all. The trial court agreed and the officer recited the entire transcript. Therefore, Morrison has waived his objection to the officer reading the transcript for the jury.[9] Morrison's additional argument that his right against self-incrimination was violated by the admission of his confession, which was voluntary, obtained after the proper rights warnings and waivers, and admitted at his 1987 trial, is without merit.

The crime scene photographs show the restraints Morrison attempted to use on the murder victim and the ransacking of the house due to Morrison's attempt to find and steal items of value. These photographs supported the state's version of the crime scene and illustrated the resourcefulness displayed by the defendant to accomplish his criminal purposes.

The trial court properly weighed the probative value of this evidence against the danger of unfair prejudice and determined that the evidence was admissible.[10] The trial court also provided lengthy limiting instructions before the presentation of any evidence about Morrison's crimes and in its final charge to the jury, charging them that this evidence was only to be considered for the limited purpose of determining whether Morrison is mentally retarded. Because this evidence was relevant to the issue of Morrison's mental abilities, we conclude that its admission was not an abuse of discretion. Accord-

---

[9] See *Barnes v. State*, 269 Ga. 345, 356 (19) (496 SE2d 674) (1998) (invited error is not grounds for reversal); *Pye v. State*, 269 Ga. 779, 787 (505 SE2d 4) (1998) (a party cannot ignore what it perceives to be error at trial, take a chance on a favorable verdict, and then complain on appeal).

[10] See *Zant v. Foster*, 261 Ga. at 452.

ingly, we find no error.

3. Morrison also argues that the trial court erred by giving a jury charge that failed to inform the jury that Morrison would serve a sentence of life imprisonment if found to be mentally retarded. We conclude, however, that the given instruction properly protected Morrison's rights without improperly transforming Morrison's *Fleming v. Zant* trial into a second sentencing trial.

In the relevant portion of the jury instructions, the trial court charged the jury:

> Now, should you find the Defendant mentally retarded, the Defendant will be given over to the Department of Corrections or to the Department of Human Resources as the mental condition of the Defendant may warrant.

This charge is nearly identical to the instruction required by the Georgia statute on mental retardation.[11] In contrast, Morrison requested that the trial court inform the jury that he would receive an automatic life sentence if they found him to be mentally retarded.

Although the sentencing consequences of a mental retardation verdict are generally not disclosed to the jury, this Court has allowed the language mandated by this Georgia statute as a limited exception to that general rule.[12] The purpose of the charge is to protect the defendant's rights to an impartial verdict on the issue of retardation by informing the jury that a finding of mental retardation would not result in the immediate release of the defendant.[13] This allows the jury to focus on the issue of mental retardation without concern that the defendant would be released if they found him mentally retarded.

Just as this Court has recognized the need to inject limited sentencing issues into jury instructions where the Georgia statute on mental retardation applies, there is also a need to do so in cases that are tried according to the procedures outlined in *Fleming v. Zant*.[14] Otherwise, this jury may have erroneously concluded that a verdict finding the defendant mentally retarded would have eliminated any penal consequences for the crimes for which he had already been convicted. The given instruction properly informed the jury that a verdict of mental retardation would not result in the defendant's release from the custody of the state.

---

[11] See OCGA § 17-7-131 (b) (3) (C).

[12] See *Patillo*, 262 Ga. at 260.

[13] Id.

[14] The statutory prohibition on the execution for mentally retarded persons applies only to cases tried after July 1, 1988, while the procedures outlined in *Fleming v. Zant* apply to cases tried before that date. *Fleming*, 259 Ga. at 688, 691.

The instruction requested by Morrison, however, would go beyond correcting any misconceptions regarding the defendant's custody and would instead turn the *Fleming v. Zant* trial into a second sentencing trial. This Court has already rejected that result.[15] The trial court did not err by refusing to charge the jury that a verdict of mental retardation would result in a life sentence for Morrison.

4. Morrison claims that the trial court committed reversible error in its response to Morrison's objections to allegedly improper arguments made by the prosecutor. First, Morrison claims that the trial court should have given a curative instruction after the prosecutor improperly mentioned Morrison's 1986 escape from a South Carolina jail in his opening argument. The trial court sustained Morrison's objection to the statement, but there is no evidence that Morrison ever requested a curative instruction or a mistrial. Because Morrison failed to ask for a mistrial or a curative instruction, the trial court did not err in failing to give one sua sponte.[16]

Morrison also argues that the prosecutor's reference to "responsibility" in his closing argument improperly directed the jury's attention to Morrison's guilt for the underlying crimes, and that the trial court erred by failing to sustain Morrison's objection to the statement. Viewed in context of the prosecutor's closing argument, however, it is apparent that the reference dealt only with the jury's responsibility in determining mental retardation and not Morrison's criminal responsibility. The trial court did not err by overruling Morrison's objection.

5. Because Morrison failed to show any trial errors and "Georgia does not follow a cumulative error rule of prejudice,"[17] Morrison's cumulative error argument is without merit.

6. Next, Morrison argues that two recent decisions by the United States Supreme Court, *Atkins v. Virginia*[18] and *Ring v. Arizona*,[19] require this Court to hold Georgia's *Fleming v. Zant* trial procedure unconstitutional because under that procedure the defendant bears the burden of proving that he is mentally retarded. Morrison also argues that these cases require this Court to declare Georgia's proportionality review unconstitutional because it is performed by appellate judges rather than a jury.

*Atkins* only established a federal constitutional prohibition on

---

[15] *Patillo,* 262 Ga. at 260-261; *Foster,* 272 Ga. at 70-71 (3).

[16] See *Kyler v. State,* 270 Ga. 81, 82 (2) (508 SE2d 152) (1998) abrogated on other grounds by *Mann v. State,* 273 Ga. 366, 370 (541 SE2d 645) (2001); *Prince v. State,* 257 Ga. 84, 88 (6) (355 SE2d 424) (1987).

[17] *Laney v. State,* 271 Ga. 194, 198 (11) (515 SE2d 610) (1999); *Malaguti v. State,* 273 Ga. 398, 403 (5) (543 SE2d 1) (2001).

[18] 536 U. S. 304 (122 SC 2242, 153 LE2d 335) (2002).

[19] 536 U. S. 584 (122 SC 2428, 153 LE2d 556) (2002).

executing mentally retarded criminals, while Georgia has had its own such prohibition since 1988. The Supreme Court also specifically stated in *Atkins* that, with regard to the determination of a defendant's mental retardation, it would " 'leave to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon its execution of sentences.' "[20]

The *Ring* opinion does not require that the State bear the burden of proving beyond a reasonable doubt that Morrison is not retarded. Instead, *Ring* addressed the constitutionality of statutory sentencing schemes that mandate that a judge, rather than a jury, find the aggravating factors statutorily required to make a case eligible for the death penalty.[21] The U. S. Supreme Court ruled that where a legislature has conditioned eligibility for the death penalty on a finding of fact, the defendant is entitled to a jury determination of that fact, and the State must carry the burden.[22] *Ring* does not address mental retardation, and Georgia law does not condition eligibility for the death penalty on a finding that the defendant has a particular level of intelligence. Morrison had the burden of proving his mental retardation by a preponderance of the evidence in a jury trial and, after both sides had presented evidence, the jury found that he had failed to carry his burden. This procedure is not unconstitutional.

7. Morrison also argues that Georgia's system of proportionality review is unconstitutional under *Ring* because it is accomplished by appellate judges rather than a jury. Under proportionality review, the Supreme Court of Georgia reviews each sentence of death to determine whether there are other cases with similar facts in which the defendant was sentenced to death to ensure that the death penalty was not "imposed under the influence of passion, prejudice, or any other arbitrary factor."[23] It is not a fact on which the legislature has conditioned an increase in the maximum punishment or an aggravating factor. Under the process of proportionality review, the Supreme Court of Georgia can only lessen or affirm the jury's sentence, it cannot increase it.[24]

8. Finally, the trial court did not err by refusing to accept a settlement between Morrison and the State prior to the mental retardation trial.[25] The trial court noted that Morrison had already been sen-

---

[20] *Atkins,* 122 SC at 2250, quoting *Ford v. Wainwright,* 477 U. S. 399, 416-417 (106 SC 2595, 91 LE2d 335) (1986).

[21] *Ring,* 122 SC at 2437.

[22] Id. at 2439.

[23] *Gregg v. Georgia,* 428 U. S. 153, 204 (96 SC 2909, 49 LE2d 859) (1976); OCGA § 17-10-35 (a).

[24] OCGA § 17-10-35 (e).

[25] *State v. Germany,* 246 Ga. 455, 456 (271 SE2d 851) (1980) (trial court is not required to accept a plea agreement between the state and the defendant); *Sartin v. State,* 201 Ga.

tenced to death, and that only a determination of whether he is mentally retarded remained.

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 11, 2003 —
RECONSIDERATION DENIED JULY 29, 2003.

*Richard E. Allen, Gary A. Alexion,* for appellant.

*Daniel J. Craig, District Attorney, Thurbert E. Baker, Attorney General, Patricia A. Burton, Mitchell P. Watkins, Assistant Attorneys General,* for appellee.

*Michael M. Mears, Holly L. Geerdes, Therese M. Day,* amici curiae.

---

App. 612, 612-613 (1) (411 SE2d 582) (1991).