306 Ga. 587
FINAL COPY

S19A0854.  FOSTER v. THE STATE.

NAHMIAS, Presiding Justice.

In 2005, Appellant Calvin Foster shot and killed his estranged wife, Daphne Foster ("Daphne"). He was tried and convicted of malice murder and a firearm offense in 2006, but this Court reversed the convictions in *Foster v. State,* 283 Ga. 47 (656 SE2d 838) (2008). In 2009, Appellant was retried and convicted of the same offenses. After long delays in post-trial proceedings, he now appeals, arguing that there was insufficient evidence to support his convictions and that the trial court gave inconsistent jury instructions. We affirm.[1]

---

[1] The crimes occurred on September 27, 2005. Appellant was indicted in Richmond County on December 20, 2005, for malice murder, felony murder based on aggravated assault, and possession of a firearm during the commission of a crime. At a trial in November 2006, the jury found Appellant guilty on all counts, but this Court reversed his convictions in January 2008 due to the trial court's failure to fully charge the jury on Appellant's insanity defense in accordance with OCGA § 17-7-131. See *Foster*, 283 Ga. at 48-50. Appellant was retried from February 2 to 5, 2009. The jury found him guilty on all counts, and the trial court sentenced him to serve life in prison for murder plus five years for the firearm offense. Although the trial court purported to merge the felony murder count into the malice murder conviction,

1. Viewed in the light most favorable to the verdicts, the evidence presented at Appellant's trial in 2009 showed the following. In March 2005, Appellant and Daphne separated, and she moved to a house in Augusta several miles away from Appellant. Despite their separation, Appellant would pick up Daphne from her house to take her to work a couple of times a week. On September 24, Daphne told her sister that she was planning to divorce Appellant.

On September 27, Daphne's brother saw Appellant at her house at 6:00 a.m. and assumed that he was taking Daphne to work. Around 8:30 a.m., Brenda Riviera, one of Appellant's neighbors, was eating breakfast when she heard someone banging at her front door, ringing the doorbell, and crying loudly for help. Before Riviera could react, she heard a series of loud gunshots. She opened the door and

---

that count was actually vacated as a matter of law. See *Johnson v. State*, 292 Ga. 22, 24 (733 SE2d 736) (2012). Appellant filed an untimely motion for new trial on March 12, 2009. Over the next nine years, the case was re-assigned to several public defenders. On November 7, 2018, one of Appellant's current attorneys entered her appearance and filed a motion for out-of-time appeal, which the trial court granted. She also filed an amended motion for new trial, which the court denied after a hearing. See *Fairclough v. State*, 276 Ga. 602, 603 (581 SE2d 3) (2003). Appellant filed a timely notice of appeal, and the case was docketed in this Court for the April 2019 term and submitted for decision on the briefs.

saw Daphne lying on the porch, still breathing but seriously injured. Riviera called 911. After hearing the gunshots, two other neighbors saw Appellant walking around the side of his house to Daphne's car, which was in his driveway. Appellant entered the car and drove off. He appeared to be in no rush. Daphne was taken to the hospital, where she soon died.

Appellant left a voicemail for Daphne's brother-in-law, in which Appellant said, "I just shot Daphne." Around 9:30 a.m., Appellant called 911, saying that he needed to speak to someone about what he had done; he told the dispatcher, "I shot my wife. . . . I'm getting ready to turn myself [in]." An officer located Appellant on the side of a road about a mile from the crime scene. Appellant was covered in blood. The officer arrested Appellant and attempted to advise him of his rights as required by *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966), but Appellant kept interrupting to ask about Daphne, saying repeatedly, "I didn't mean to do it."

At trial, the medical examiner who conducted Daphne's

autopsy testified that her cause of death was multiple gunshot wounds — one to her head and one to her neck from bullets fired from an indeterminate range, and one to her back from a bullet fired with the gun's muzzle against her skin. Six cartridge casings were found at the scene of the shooting, and DNA collected from Appellant's bloodstained clothes matched Daphne's DNA.

Appellant presented an insanity defense.[2] He called Dr. James Stark, who was qualified as an expert in forensic psychology. Based on an evaluation of Appellant in May 2006, Dr. Stark testified that Appellant had learning disabilities and an "essentially average IQ"; his "reading, writing, spelling, and arithmetic [were] at fifth through seventh grade levels." Dr. Stark also testified that he thought Appellant had a transitory psychotic episode and did not know the difference between right and wrong at the time of the shooting. On

---

[2] See OCGA §§ 16-3-2 ("A person shall not be found guilty of a crime if, at the time of the act . . . constituting the crime, the person did not have mental capacity to distinguish between right and wrong in relation to such act . . . ."), 16-3-3 ("A person shall not be found guilty of a crime when, at the time of the act . . . constituting the crime, the person, because of mental disease, injury or congenital deficiency, acted as he did because of a delusional compulsion as to such act which overmastered his will to resist committing the crime.").

cross-examination, however, Dr. Stark admitted that he had come to a different conclusion in his report written in July 2006. In that report, Dr. Stark concluded that at the time of the shooting, Appellant did know the difference between right and wrong and was not acting under a delusional compulsion. Dr. Stark claimed that he had changed his conclusion "after thinking about it and pondering on it more," although he never submitted an addendum to his written report.

To rebut Appellant's insanity defense, the State called Dr. Elizabeth Donnagan, who was also qualified as an expert in forensic psychology. Dr. Donnagan had evaluated Appellant in September 2006 and had reviewed police reports, witness statements, and Appellant's own statements to the police. Dr. Donnagan concluded that at the time of the shooting, Appellant was able to tell the difference between right and wrong and was not suffering from a delusional compulsion. In addition, Daphne's sister and brother-in-law testified that Appellant had not shown signs of mental illness in the years they knew him. Appellant's neighbors and the arresting

officer also testified that on the day of the shooting, Appellant did not appear to be talking to himself or responding to sights only he could see. Appellant did not testify.

Appellant contends that the evidence presented at his trial was insufficient to support his convictions, because Dr. Stark's testimony that Appellant was unable to discern right from wrong at the time of the shooting created a reasonable doubt as to whether he could form the intent required for malice murder. See OCGA § 16-5-1 (a) ("A person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being."). It is the province of the jury, however, to weigh evidence and resolve conflicts in testimony. See *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009). The jury in this case considered competing expert testimony along with the other evidence and found Appellant guilty. When viewed properly in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to reject Appellant's insanity defense and to find him guilty beyond a

reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also *Bowman v. State*, 306 Ga. 97, 100 (829 SE2d 139) (2019) ("[T]here was competing expert testimony concerning [the defendant's] sanity, and the jury was not required to accept the opinion of the defense experts."); *Alvelo v. State*, 290 Ga. 609, 612-613 (724 SE2d 377) (2012).

2. Appellant also contends that the trial court erred by giving the jury inconsistent instructions regarding its consideration of his punishment. In deciding whether jury instructions were misleading or confusing, we consider the disputed charges in the context of the instructions as a whole. See *Carpenter v. State*, 305 Ga. 725 (827 SE2d 250) (2019). We see no error in the instructions the trial court gave.

(a) As required by OCGA § 17-7-131 — and as we held that the trial court failed to do fully in Appellant's first trial, resulting in the reversal of his convictions, see *Foster*, 283 Ga. at 48-50 — the trial court gave the jury the following instructions based on Appellant's

7

assertion of an insanity defense:

I charge you that should you find the defendant not guilty by reason of insanity at the time of the crime[,] the defendant will be committed to a state mental health facility until such time, if ever, the Court is satisfied that he should be released pursuant to law.

Members of the jury, I charge you that if and only if you do not find the defendant not guilty by reason of insanity then you may consider whether or not the defendant was mentally ill. . . . [T]he term mentally ill means having a disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with ordinary demands of life. The term mentally ill does not include a mental state shown only by repeated, unlawful, or antisocial conduct. . . .

[S]hould you find the defendant guilty but mentally ill at the time of the crime[,] the defendant will be placed in the custody of the Department of Corrections [w]hich will have responsibility for the mental health needs of the defendant[,] [w]hich may include at the discretion of the Department of Corrections referral or temporary hospitalization at a facility operated by the Department of Human Resources. . . .

[S]hould you find the defendant guilty but mentally retarded[,] the defendant will be placed in the custody of the Department of Corrections which will have responsibility for the evaluation and treatment of the mental health needs of the defendant[,] which may include at the discretion of the Department of Corrections referral for temporary hospitalization at a facility operated by the Department of Human Resources.

These instructions essentially tracked the applicable pattern jury

8

instructions, which include the definition of "mentally ill" found in subsection (a) (1) of OCGA § 17-7-131, and substantially tracked the language of former subsection (b) (3). See former OCGA § 17-7-131; Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, §§ 3.80.20–3.80.50 (2019).[3]

---

[3] At the time of Appellant's February 2009 trial, OCGA § 17-7-131 (b) (3) said:

> In all cases in which the defense of insanity is interposed, the trial judge shall charge the jury, in addition to other appropriate charges, the following:
> (A) I charge you that should you find the defendant not guilty by reason of insanity at the time of the crime, the defendant will be committed to a state mental health facility until such time, if ever, the Court is satisfied that he or she should be released pursuant to law.
> (B) I charge you that should you find the defendant guilty but mentally ill at the time of the crime, the defendant will be placed in the custody of the Department of Corrections which will have responsibility for the mental health needs of the defendant, which may include, at the discretion of the Department of Corrections, referral or temporary hospitalization at a facility operated by the Department of Human Resources.
> (C) I charge you that should you find the defendant guilty but mentally retarded, the defendant will be placed in the custody of the Department of Corrections which will have responsibility for the evaluation and treatment of the mental health needs of the defendant, which may include, at the discretion of the Department of Corrections, referral for temporary hospitalization at a facility operated by the Department of Human Resources.

Subsection (b) (3) has been amended several times since then. The phrase "mental illness or intellectual disability" has been added after "insanity" in the introductory sentence, the term "mentally retarded" has been changed to "with

After explaining the possible verdicts to the jury, the trial court also gave the pattern instruction on the jury's role in determining punishment: "[Y]ou are only concerned with the guilt or innocence of the defendant. You are not to concern yourselves with punishment." Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.70.20 (2019). Defense counsel objected on the ground that these charges considered together were confusing.

During deliberations, the jury asked the trial court for a written definition of mental illness. The court advised the parties that it preferred to re-charge the jury orally. Defense counsel asked the court to recite only the definition of "mentally ill" and objected to the extent that the court intended to re-charge on the portion of the earlier instructions that referenced the custody of the Department of Corrections and the Department of Human Resources. The court overruled the objection and again read the jury the statutory definition of "mentally ill" and the provision on

intellectual disability," and "Department of Human Resources" has been changed to "Department of Behavioral Health and Developmental Disabilities."

10

placement of defendants found guilty but mentally ill found in former OCGA § 17-7-131 (b) (3) (B).

(b) Appellant argues that a jury will inevitably be confused when the trial court gives both the instructions mandated by OCGA § 17-7-131 (b) (3) and the standard instruction that the jury is not to consider punishment. Appellant maintains that the instructions contradict each other, requiring the jury to be informed of the consequences of some of its choices but disallowed from considering those consequences. According to Appellant, this contradiction makes the charges misleading and, therefore, the trial court erred in instructing the jury in this way. We do not agree.

In 1970, the General Assembly created a bifurcated trial system for felony criminal cases that required the jury to first render a verdict of guilty or not guilty "without any consideration of punishment" before proceeding to sentencing the defendant. Ga. L. 1970, p. 949, § 1; *Wilson v. State*, 233 Ga. 479, 482 (211 SE2d 757) (1975). Four years later, the legislature transferred sentencing responsibility from the jury to the trial court in all felony cases in

which the death penalty was not sought. See Ga. L. 1974, p. 352, § 1; *Sheffield v. State*, 235 Ga. 507, 508 (220 SE2d 265) (1975). This bifurcated trial system remains in place today.[4]

In 1974, this Court held that it was inappropriate, but not harmful error, to inform the jury of the statutory consequences of a verdict of not guilty by reason of insanity. See *Hulsey v. State*, 233 Ga. 261, 262 (210 SE2d 797) (1974). In 1985, however, the General Assembly enacted what is now OCGA § 17-7-131 (b) (3), expressly mandating that the trial court charge the jury on a defendant's placement as a result of certain verdicts related to the insanity defense. See Ga. L. 1985, p. 637, § 2. The legislature "made the statutory charge mandatory to 'prevent courts from incorrectly summarizing the law and confusing the jury.'" *Hancock v. State*, 277 Ga. 835, 838 (596 SE2d 127) (2004) (citation omitted). We have held

---

[4] See, e.g., OCGA §§ 17-9-2 ("The jury . . . shall give a general verdict of 'guilty' or 'not guilty.' Upon a verdict of 'guilty,' the sentence shall be imposed by the judge, unless otherwise provided by law. . . ."), 17-10-2 ("[U]pon the return of a verdict of 'guilty' in any felony case, the judge shall dismiss the jury and shall conduct a presentence hearing at which the only issue shall be the determination of punishment to be imposed. . . .").

that failing to give the statutory charge informing the jury of the consequences of these verdicts is presumptively harmful error. See *Foster*, 283 Ga. at 49-50. See also *Guilford v. State*, 258 Ga. 253, 253 (368 SE2d 116) (1988).[5]

This Court has explained that the jury instructions required by OCGA § 17-7-131 (b) (3) create a "limited exception to the general rule proscribing consideration of the consequences of a guilty verdict." *State v. Patillo*, 262 Ga. 259, 260 (417 SE2d 139) (1992). This exception protects the defendant's right to an impartial verdict by correcting any misconceptions jurors may have that a verdict of not guilty by reason of insanity, guilty but mentally ill, or guilty but with intellectual disability would result in the defendant's immediate release (as does a verdict of not guilty). See id. See also

---

[5] We note that in *Shannon v. United States*, 512 U.S. 573 (114 SCt 2419, 129 LE2d 459) (1994), the United States Supreme Court held that a jury instruction on the consequences of a verdict of not guilty by reason of insanity is not required by the federal Insanity Defense Reform Act of 1984 — which, unlike OCGA § 17-7-131, does not expressly mandate such an instruction. See *Shannon*, 512 U.S. at 580-584. But the Court recognized that such instructions have long been given by courts in the District of Columbia and did not hold that states may not require such instructions. See id. at 592 & n.3 (Stevens, J., dissenting) (noting that "[a]n increasing number of States that have considered the question endorses the use of the instruction").

*Spraggins v. State*, 258 Ga. 32, 33-34 (364 SE2d 861) (1988) (reversing convictions where the OCGA § 17-7-131 (b) (3) (B) jury instruction was not given and the prosecutor implied during closing argument that a verdict of guilty but mentally ill would result in the defendant's release).

Once the jury understands the nature of these particular verdicts, it can focus solely on the mental condition of the defendant and decide that issue free from concerns about whether and how the defendant might be punished. See *Patillo*, 262 Ga. at 260. See also *Morrison v. State*, 276 Ga. 829 (583 SE2d 873) (2003). Thus, the OCGA § 17-7-131 (b) (3) instructions serve to ensure that the jury does not improperly concern itself with the lesser-known punishments associated with an insanity defense, thereby supplementing, rather than conflicting with, the general instruction to the jury not to concern itself with punishment. The trial court did not err in giving the disputed instructions.

*Judgment affirmed. All the Justices concur.*

DECIDED AUGUST 19, 2019.
Murder. Richmond Superior Court. Before Judge Brown.
*Lucy D. Roth, Katherine M. Mason*, for appellant.
*Natalie S. Paine, District Attorney, Joshua B. Smith, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General*, for appellee.