**FIRST DIVISION**
**BROWN, C. J.,**
**BARNES, P. J., and WATKINS, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 3, 2026**

# In the Court of Appeals of Georgia

A25A2202. YERDON v. STATE.

WATKINS, Judge.

A jury found Shane Yerdon guilty of several charges, and in doing so, rejected Yerdon's plea that he be found not guilty by reason of insanity. Following the denial of his motion for new trial, Yerdon appeals, contending that his trial counsel was ineffective for failing to object to comments made by the prosecutor in closing argument regarding the consequence of rendering a verdict of not guilty by reason of insanity. For the reasons contained herein, we find no reversible error and we affirm.

Reviewing the facts, which are not disputed by Yerdon, in the light most favorable to support the verdict,[1] the record shows that J. S. ended a romantic

---

[1] See *Chadwick v. State*, 360 Ga. App. 491 (861 SE2d 612) (2021).

relationship with Yerdon, which angered him. The following day, Yerdon attacked four people in J. S.'s mobile home park community. He sliced the throat of one victim and pushed another victim to the ground, then he went to a different trailer and stabbed two more victims. J. S. was able to run out of the first trailer and call 911. Soon after the final attack, Yerdon called his sister and said he thought he stabbed three people. He identified one of the victims by name and provided his sister with a description which matched two of the other victims.

Yerdon was arrested and indicted for aggravated battery, simple battery, and three charges of aggravated assault.[2] Prior to trial, Yerdon gave notice of his intention to raise the defense of insanity. "A defendant claiming insanity has the burden of proving this affirmative defense by a preponderance of the evidence[.]"[3] Pursuant to OCGA § 17-7-131(a)(1), "'insane at the time of the crime' means meeting the criteria of Code Section 16-3-2 or 16-3-3[.]" Those code sections provide that "[a] person shall not be found guilty of a crime if, at the time of the act ... the person did not have

---

[2] The State dismissed a charge of kidnapping with bodily injury.

[3] *Foster v. State*, 283 Ga. 47, 48 (1) (656 SE2d 838) (2008).

mental capacity to distinguish between right and wrong in relation to such act[,]"[4] and that "[a] person shall not be found guilty of a crime when, at the time of the act … constituting the crime, the person, because of mental disease, injury, or congenital deficiency, acted as he did because of a delusional compulsion as to such act which overmastered his will to resist committing the crime."[5]

At trial, Yerdon's evaluator Dr. Butryn, who was an expert in neuro-psychology, testified that Yerdon suffered from Bipolar 1 disorder and personality disorder and that he exhibited psychotic features.[6] Dr. Butryn further testified that Yerdon's condition could cause a "rage-like episode[.]" Dr. Butryn opined that Yerdon had experienced such an episode when he attacked the victims and that the episode "played a role in overmastering his ability to make appropriate decisions at that time[,]" and that Yerdon could not discern right from wrong during that episode Dr. Butryn admitted, however, that he had not reviewed the incident report of the

---

[4] OCGA § 16-3-2.

[5] OCGA § 16-3-3.

[6] Yerdon's treating psychiatrist also diagnosed Yerdon with Bipolar 1 disorder with psychotic symptoms.

attack or Yerdon's statement to police before Dr. Butryn formulated his opinion, and that he had "no idea" if reviewing them first would have impacted his opinion.

The trial court's evaluator, Dr. Smith, testified as an expert in forensic psychology and opined that Yerdon showed signs of malingering during the competency evaluation. Dr. Smith testified that a person can be both mentally ill and criminally responsible for his actions. Dr. Smith opined that Yerdon did have the capacity to distinguish right from wrong when he attacked the victims and that he was not suffering under a delusional compulsion that would have outmastered his will to resist attacking them.

During closing arguments, the prosecutor made the following statement without objection regarding the consequence of rendering a verdict of not guilty by reason of insanity:

> [Yerdon's counsel] came up and she just said she was making excuses, this is what the State's going to do, this is what the State's going to say, this is what the State — all this, saying that I just want prison time. No. [Do I] have a robe on right now? [Do I] have that authority to make a decision on whether this man goes to prison or not? I know what I would like to happen. But that man up there [the judge] makes that tough decision, not me. He's listened to this case just like everybody else has, and he has been doing this so long that he will make that ...

4

determination, and I will respect whatever … he does. *But not guilty by insanity, and 30 days he could be out on the street without even having a hearing.* I don't see that. Thank you.[7]

The trial court charged the jury about the different verdicts it could render and instructed their respective consequences, informing the jury that if it found Yerdon "not guilty by reason of insanity at the time of the crime, he will be committed to a state mental health facility until such time, if ever, [t]he [c]ourt is satisfied that he should be released pursuant to law." The trial court further charged that if the jury found Yerdon guilty but mentally ill at the time of the crime,

> he will be placed in the custody of the Department of Corrections which will have responsibility for the evaluation and treatment of the mental health needs of the Defendant which may include at the discretion of the Department of Corrections referral for temporary hospitalization at a facility operated by the Department of Behavioral Health and Developmental Disabilities.

The trial court also instructed the jury that it was to be "only concerned with the guilt or the innocence of the accused."

---

[7] Emphasis supplied.

Ultimately, the jury found Yerdon guilty on all counts. Yerdon filed a motion for new trial alleging, inter alia, that trial counsel was ineffective. The trial court denied the motion after a hearing, and this appeal followed.[8]

In a single claim of error, Yerdon argues that the trial court erred in denying his motion for new trial because his trial counsel was ineffective for failing to object to the prosecutor's comments during closing argument about the potential consequence of finding him not guilty by reason of insanity in a way which improperly implied his future dangerousness. We find no error.

---

[8] Yerdon was tried in September 2011 and the initial motion for new trial was filed shortly thereafter. A particularized amended motion for new trial was not filed until May 2022 and it was not ruled on until June 2025.

> Although [Yerdon] raises no claim of prejudice as a result of the delay, our Supreme Court has strongly rebuked delay in the resolution of post-conviction matters. As our Supreme Court explained, even if long-delayed appeals rarely result in outright reversals of convictions or only retrials or resentencings, these extended and unjustified delays in resolving criminal cases make our State's criminal justice system appear unfair and grossly inefficient. We must all work to prevent delays, particularly in the most serious of our criminal cases, that cannot be explained or justified to the parties in those cases, the victims of crimes, and the public we serve.

*Tucker v. State*, 355 Ga. App. 796, 797 n. 4 (845 SE2d 759) (2020) (citation and punctuation omitted).

To prevail on a claim of ineffective assistance pursuant to *Strickland v. Washington*,[9]

> a defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong.[10]

Yerdon complains that the prosecutor's comment in closing prejudicially and inaccurately characterized the consequence of finding him not guilty by reason of insanity. In reviewing this claim of error, we acknowledge that "[a] prosecutor is granted wide latitude in the conduct of closing argument [and that a] closing argument is to be judged in the context in which it is made."[11] Generally, however, "it is improper for a prosecutor to argue to the jury during the guilt-innocence phase of any

---

[9] 466 US 668, 687 (III) (104 SCt 2052, 80 LEd2 674) (1984).

[10] *Walker v. State*, 349 Ga. App. 188, 192 (4) (825 SE2d 578) (2019) (citations and punctuation omitted).

[11] *Thompson v. State*, 318 Ga. 760, 767 (4) (b) (900 SE2d 607) (2024) (citations and punctuation omitted).

criminal trial that if found not guilty, a defendant poses a threat of future dangerousness."[12]

Importantly here, however, Georgia law requires that when the affirmative defense of insanity is pled, the jury must be charged concerning the consequence of the various verdicts it can render. Specifically, the trier of fact shall find, inter alia, whether the defendant is guilty, not guilty, not guilty by reason of insanity at the time of the crime, or guilty but mentally ill at the time of the crime.[13]

Moreover,

OCGA § 17-7-131 (b)(3), expressly mandat[es] that the trial court charge the jury on a defendant's placement as a result of certain verdicts related to the insanity defense. The legislature made the statutory charge mandatory to prevent courts from incorrectly summarizing the law and confusing the jury. ... [F]ailing to give the statutory charge informing the jury of the consequences of these verdicts is presumptively harmful error. ... [T]he jury instructions required by OCGA § 17-7-131 (b)(3) create a limited exception to the general rule proscribing consideration of the consequences of a guilty verdict. This exception protects the defendant's right to an impartial verdict by correcting any misconceptions jurors may have that a verdict of not guilty by reason of

---

[12] *Wyatt v. State*, 267 Ga. 860, 864 (2)(b) (485 SE2d 470) (1997).

[13] OCGA § 17-7-131 (b)(1) (September 2011).

8

insanity ... would result in the defendant's immediate release (as does a verdict of not guilty). Once the jury understands the nature of these particular verdicts, it can focus solely on the mental condition of the defendant and decide that issue free from concerns about whether and how the defendant might be punished. Thus, the OCGA § 17-7-131 (b)(3) instructions serve to ensure that the jury does not improperly concern itself with the lesser-known punishments associated with an insanity defense, thereby supplementing, rather than conflicting with, the general instruction to the jury not to concern itself with punishment.[14]

Here, the jury was properly charged before the trial that the judge would supply the law the jury would consider and it was properly charged after the close of evidence as required by OCGA § 17-7-131 (b)(3). Further, in closing, Yerdon's counsel discussed the consequence of a verdict finding him not guilty by reason of insanity[15] by stating, "that doesn't mean he's released. That doesn't mean society is not protected. You have to trust the mental [health] professionals and the Judges that you elect and [t]he [c]ourt to not release him unless they determine he's ... no longer dangerous." Then, at the end of her closing argument, trial counsel reiterated:

---

[14] *Foster v. State*, 306 Ga. 587, 592-593 (2) (b) (832 SE2d 346) (2019) (citations and punctuation omitted).

[15] Yerdon does not claim error with his trial counsel's closing argument.

[Yerdon] being committed to a mental institution is not letting him evade responsibility. It is not letting him walk free. It is taking away his liberty just like it would if he were sent to prison, which a ... guilty but mentally ill verdict would do. A guilty but mentally ill verdict would send him to prison. A mental hospital has more intensive treatment. He would be able to get it there. That's the best environment, and it would also protect society. You have to trust [t]he [c]ourt and the mental health professionals not to release someone if they're still dangerous and to make sure they are properly treated.

The State also, in a different portion of its closing argument, provided a more accurate description of the manner in which a defendant who was found not guilty by reason of insanity could be released without a hearing. Specifically, the prosecutor read from a section of OCGA § 17-7-131(a), which provides, in relevant part, that when a defendant is found not guilty by reason of insanity at the time of the crime, the defendant is to be detained in a state mental health facility and is to be evaluated within 30 days to determine his then-present mental condition; if the evaluation report "indicates that the defendant does not meet the [statutory] inpatient commitment criteria ... , the trial judge may issue an order discharging the defendant from custody without a hearing."[16]

---

[16] See OCGA § 17-7-131 (d) - (e)(1).

Viewed in context, the closing arguments of both the State and Yerdon correctly described the legal consequences of the permissible verdicts, even if the prosecutor's parting remark did not include all of the requirements for a defendant to be released without a hearing pursuant to OCGA § 17-7-131. Even if trial counsel was deficient for failing to object to the prosecutor's remark, which is doubtful, Yerdon cannot prevail on his claim of ineffective assistance "unless [Yerdon can] also establish that the failure to object was so prejudicial to his defense that, but for this deficiency, there was a reasonable probability that the outcome of his trial would have been different."[17] Yerdon does not meet this standard. The jury was legally required to be informed that a verdict of not guilty by reason of insanity would result in his commitment, rather than his incarceration, until released by the trial court.[18] And trial counsel's closing argument stressed that if found not guilty by reason of insanity, Yerdon would only be released it he was found by mental health professionals and the court to be no longer dangerous. Moreover, any harm caused by the prosecutor's

---

[17] *Reed v. State*, 291 Ga. 10, 16 (4)(b) (727 SE2d 112) (2012) (citation and punctuation omitted).

[18] Notably, the jury seemingly rejected Yerdon's argument that mental illness played any role in his actions as it also declined to find him guilty but mentally ill at the time of the crime.

comment in closing was mitigated by the legally accurate charge the trial court gave the jury.[19] Accordingly, the trial court did not err in denying Yerdon's motion for new trial.

*Judgment affirmed. Brown, C. J., and Barnes, P. J., concur.*

---

[19] See, e.g., *Thompson*, 318 Ga. at 767 (4)(a).