## S02A1310. ROGERS v. THE STATE.
(575 SE2d 879)

HUNSTEIN, Justice.

Appellant James Rogers challenges the trial court's order finding that he waived his request for a jury trial on the issue of mental retardation pursuant to *Fleming v. Zant,* 259 Ga. 687 (386 SE2d 339) (1989). Because we hold that a defendant who was tried for a capital crime prior to July 1, 1988 cannot waive his request for a hearing to determine whether he is mentally retarded once a court finds sufficient credible evidence of mental retardation to create an issue for a jury, we reverse and remand to the trial court.

1. Rogers was convicted and sentenced to death for the murder of Grace Perry.[1] His convictions and sentence were affirmed by this Court on direct appeal. See *Rogers v. State*, 256 Ga. 139 (344 SE2d 644) (1986). Following the procedure outlined by this Court in *Fleming*, in 1994 Rogers initiated state habeas corpus proceedings by filing a petition seeking a jury trial on the issue of mental retardation. At a hearing on his petition, Rogers presented evidence of mental retardation, including affidavits of mental health experts who diagnosed him as mentally retarded and suffering from significant neuro-

---

[1] Rogers was convicted in 1982 for the murder of Perry and aggravated assault of Edith Polston and sentenced to death. On direct appeal, this Court reversed his convictions and sentences based on the unconstitutional composition of the Floyd County grand jury. See *Devier v. State*, 250 Ga. 652 (1) (300 SE2d 490) (1983). After a second trial, Rogers was again found guilty of murder and aggravated assault and sentenced to death for the murder conviction and a consecutive ten-year sentence for aggravated assault.

logical impairment.[2] In a May 1995 order the habeas corpus court concluded that a genuine issue of fact existed regarding Rogers' mental retardation and granted the writ for the purpose of conducting a *Fleming* trial.

On return to the trial court, counsel was appointed to represent Rogers in the jury trial on the issue of mental retardation. In February 2001, just before the scheduled hearing, Rogers wrote a letter to the judge asking for the dismissal of the mental retardation trial. The court held a hearing on Rogers' request during which Rogers stated to the court that he was not mentally retarded. The following day the trial court entered its order finding Rogers "knowingly and voluntarily waive[d] his right to a jury trial on this issue of mental retardation."

In March 2001, with new counsel, Rogers filed a "Consolidated Motion to Vacate Dismissal of Mental Retardation Trial, To Withdraw Waiver, To Reinstate Mental Retardation Trial And/Or Notice of Appeal to Dismissal Order." An attachment to the motion contained a handwritten note from Rogers stating, "I want to have my case back in court. I want to have the court rule on my innocence. I want the court to rule on my IQ." The trial court conducted a hearing on this motion in June 2001. Before the court ruled on the motion, however, Rogers mailed another letter to the court stating, "I do not want the mental retardation trial and I would like it dismissed." On July 24, 2001, the trial court entered an order denying the motion and holding that Rogers waived a jury trial on the issue of mental retardation. Rogers' direct appeal of that order was dismissed as untimely. He thereafter filed a motion for and was granted an out-of-time appeal. On appeal, Rogers challenges the trial court's order finding that he waived his right to a trial on the issue of mental retardation.

2. Under both the Georgia and United States Constitutions, a criminal defendant may not be put to death if he is found to be mentally retarded. See *Atkins v. Virginia*, 536 U. S. 304 (IV) (122 SC 2242, 153 LE2d 335) (2002); *Fleming*, supra, 259 Ga. at 690. Accordingly, where a defendant's mental capacity is challenged or otherwise appears to be in question, the Georgia and United States Constitutions require adjudication of the defendant's mental capacity in order to determine his or her eligibility for a death sentence. In Georgia, the procedure to be followed in making such a determination depends upon the date of trial. For those defendants tried after July 1, 1988, OCGA § 17-7-131 permits them to contend that they were mentally

---

[2] Rogers also provided affidavits of teachers, former attorneys, and family members supporting the diagnosis of mental retardation.

retarded at the time of the crime and to present evidence of such mental retardation to the fact finder. In capital cases, the fact finder is then required to determine during the guilt-innocence phase of trial whether the defendant is guilty but mentally retarded. OCGA § 17-7-131 (j). Under this statutory scheme, where the trier of fact makes a specific finding that the defendant is mentally retarded, the defendant cannot be executed but must instead be sentenced to life imprisonment.[3] Id.

A defendant tried prior to July 1, 1988, for whom no judicial determination on mental retardation will have been made, may choose to raise the issue of his or her mental retardation by filing a petition for habeas corpus and presenting sufficient credible evidence, including at least one expert diagnosis of mental retardation, to create a genuine issue regarding retardation. *Fleming*, supra at 691 (4).

> If, after examining the evidence, the habeas corpus court finds that there is a genuine issue, a writ shall be granted for the limited purpose of conducting a trial on the issue of retardation only. This trial shall be held in the court in which the original trial was conducted. Petitioner shall be entitled to a full evidentiary hearing on the issue of retardation. The determination shall be made by a jury using the definition of retardation enunciated in the statute. See OCGA § 17-7-131 (a) (3).

Id. The *Fleming* trial allows petitioners to establish judicially whether mental retardation is a genuine issue and obtain resolution of that issue through a jury trial. Once a petitioner carries his burden of proof in the habeas corpus court of creating a genuine issue regarding his mental retardation, the issue must be thoroughly reviewed and passed upon. Id. At such point in the proceedings, the issue is no longer subject to waiver by a petitioner. This holding is consistent with our opinion in *Fleming* and the national and state-wide consensus against the execution of mentally retarded persons.

3. In this case, pursuant to our decision in *Fleming*, Rogers chose to initiate habeas corpus proceedings by filing a petition alleging he is mentally retarded. He thereafter adduced sufficient credible evidence of such retardation to authorize the habeas corpus court to grant the writ and remand to the superior court for a full evidentiary

---

[3] Because Rogers was tried prior to the effective date of OCGA § 17-7-131, we do not here reach the issue of whether a defendant who has contended pursuant to OCGA § 17-7-131 that he is mentally retarded may thereafter waive a determination of that issue by the fact finder.

hearing on the issue of his retardation. Despite the habeas corpus court's findings and this Court's mandate in *Fleming* that a jury trial be held on the petitioner's retardation when his mental capacity is properly placed in issue, the trial court nevertheless concluded that Rogers could voluntarily waive his right to a trial on retardation. We reject this holding. Once a habeas corpus court finds a petitioner has adduced sufficient credible evidence of mental retardation to create an issue for a jury, it is the duty of the trial court to conduct a jury trial on the issue of mental retardation pursuant to the procedures established in *Fleming*.[4] Because the trial court in this case failed to conduct a jury trial on the issue of Rogers' mental retardation, we reverse and remand to the trial court for proceedings consistent with this opinion.

*Judgment reversed and remanded. All the Justices concur, except Carley, J., who dissents.*

CARLEY, Justice, dissenting.

The trial court certainly had the duty to give Rogers the opportunity to try the issue of mental retardation before a jury. *Fleming v. Zant*, 259 Ga. 687, 691 (4) (386 SE2d 339) (1989). And, in fact, the trial court fulfilled that obligation. Having been granted a jury trial, Rogers elected to waive his right in that regard. Thus, the only issue before this Court is whether he was authorized to do so. Without citing supporting authority, the majority holds that, despite the waiver, it was "the duty of the trial court to conduct a jury trial on the issue of mental retardation pursuant to the procedures established in *Fleming*." Majority opinion, p. 70. I disagree and believe that Rogers could and did waive his right to a jury trial, and that the trial court, acting as the trier of fact, properly addressed and resolved the issue of his alleged mental retardation.

Nothing in *Fleming* holds that the procedure which it established is mandatory and cannot be waived. Even the right to trial by jury guaranteed by the Federal and Georgia Constitutions may be waived. Thus, the majority now elevates the right to a jury trial recognized in *Fleming* to a higher status than the comparable constitutional right. However, the purpose of the *Fleming* trial on the issue of retardation is to give defendants " *'essentially the same opportunity* to litigate the issue of (their) mental retardation as (they) would have had if the case(s) were tried today, with the benefit of the OCGA § 17-7-131 (j) death-penalty exclusion.' [Cit.]" (Emphasis supplied.) *Bur-*

---

[4] We reject the State's contention that the trial court properly resolved the mental retardation issue by finding in its dismissal order that Rogers is not mentally retarded. The State's argument ignores the plain language in *Fleming* requiring that the determination of whether a defendant is mentally retarded be decided by a jury.

*gess v. State*, 264 Ga. 777, 790 (36) (450 SE2d 680) (1994). Under OCGA § 17-7-131 (j), the accused does not have a non-waivable right to a jury trial. That provision clearly provides that, "should . . . the jury *or court* find in its verdict that the defendant is guilty of the crime charged but mentally retarded, the death penalty shall not be imposed. . . ." (Emphasis supplied.) Thus, the statute itself contemplates that the matter need not be resolved by a jury and, if Rogers were tried today, he could waive his right to a jury trial.

Accordingly, today's opinion is contrary to the correct construction of *Fleming*, in that it deprives the defendant of the comparable opportunity afforded by OCGA § 17-7-131 (j) to waive his right to a jury trial and to submit the issue of mental retardation to the trial court. However, the majority contends that such construction "ignores the plain language in *Fleming* requiring that the determination of whether a defendant is mentally retarded be decided by a jury." Majority opinion, p. 70, fn. 4. I submit that, to the contrary, the majority's analysis ignores the plain language in OCGA § 17-7-131 (j) authorizing an accused to waive his right to a jury determination of mental retardation.

The fact that the 1995 habeas court ruled in favor of Rogers is immaterial. That was an entirely separate proceeding. *Zant v. Foster*, 261 Ga. 450, 451 (3) (406 SE2d 74) (1991), overruled on other grounds, *State v. Patillo*, 262 Ga. 259, 261, fn. 1 (417 SE2d 139) (1992). The habeas court concluded only that there was reason to hold a trial as to retardation. It did not hold that Rogers was retarded or that he had an unwaivable right to have a jury make that determination. After the matter was returned to the trial court, Rogers sought to waive the jury trial he previously obtained from the habeas court. The trial court did not summarily accept this waiver. Instead, it conducted an evidentiary hearing and found, as a matter of fact, that Rogers was not mentally retarded. The trial court also found that Rogers was aware of the consequences of relinquishing his right to the scheduled jury trial and that he waived that right knowingly and voluntarily. The majority does not contest the sufficiency of the evidence to authorize those findings. Thus, the effect of today's holding is that, as a matter of law, one who is competent to waive his rights and who does so freely and intelligently is nevertheless not bound by his waiver. I submit that, by its creation of a non-waivable legal right to a jury trial, the majority misinterprets *Fleming* so as to deprive a competent accused of the fundamental right to make intelligent and voluntary decisions for himself. The purpose of the judiciary is not to construe the law so as to protect citizens from what the courts perceive to be bad choices, but to ensure that the law as it exists is applied correctly and enforced uniformly. In my opinion, Rogers waived his right to a jury trial under existing law, and that

waiver is valid and enforceable despite the majority's holding to the contrary.

DECIDED JANUARY 13, 2003.

*Doffermyre, Shields, Canfield, Knowles & Devine, Ralph I. Knowles, Jr., C. Rebecca Smith, Andrews & Knowles, Craig C. Knowles,* for appellant.

*Bryant G. Speed II, District Attorney, Thurbert E. Baker, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General,* for appellee.