## S04G0873. HUGHEY et al. v. GWINNETT COUNTY et al.
### (609 SE2d 324)

FLETCHER, Chief Justice.

We granted a writ of certiorari in this case to determine whether the Court of Appeals correctly held that a permit to allow Gwinnett County to discharge forty million gallons of treated wastewater into Lake Lanier on a daily basis was properly issued.[1] The undisputed facts show that the discharge will degrade the water quality in Lake Lanier. Before a permit will issue to allow the degradation of water quality in Lake Lanier, the clear and unambiguous language of Georgia's anti-degradation rules require the permittee to utilize the "highest and best [level of treatment] practicable under existing technology."[2] Because the treatment plant at issue, the Hill Plant, is capable of removing more pollutants from the discharged water than the permit requires, the permit violates the anti-degradation rules. Accordingly, we affirm in part and reverse in part.

On August 4, 1999, Gwinnett County applied for a National Pollutant Discharge Elimination System permit to discharge treated wastewater into Lake Lanier. On August 8, 2000, the Environmental Protection Division (EPD) of the Georgia Department of Natural Resources issued a draft permit for public comment. The EPD issued a final permit allowing the discharge on November 9, 2000. The permit authorized a different discharge location and depth from that which was indicated in the draft permit.

Terrence D. Hughey, a local landowner, together with the Lake Lanier Association and other entities (collectively "the challengers"), administratively appealed the EPD's permit issuance, and Gwinnett County intervened to defend the permit. After a hearing, the Administrative Law Judge found in favor of EPD and Gwinnett County, and affirmed the issuance of the permit. The challengers appealed to the Hall County Superior Court, which reversed the ALJ. Gwinnett County and EPD in turn appealed to the Court of Appeals, which reversed the superior court's order and re-affirmed the issuance of the permit. This Court then granted the challengers' petition for a writ of certiorari, and we now affirm in part and reverse in part the Court of Appeals.

1. The challengers first contend that the Court of Appeals did not have jurisdiction to decide the case because the superior court's judgment was not final, as part of the superior court's judgment ordered the case remanded to the ALJ.

The superior court's order states that the ALJ "committed legal error in concluding that the EPD complied with the procedural

---

[1] *Gwinnett County v. Lake Lanier Assn.*, 265 Ga. App. 214 (593 SE2d 678) (2004).

[2] Ga. Comp. R. & Regs. r. 391-3-6-.03 (2) (b).

requirements . . ." and that the ALJ "erred as a matter of law by misinterpreting the federal and state anti-degradation regulations." The superior court ordered the case remanded to the ALJ as a result of those errors. The mere use of the word "remand," however, does not automatically render the superior court's decision non-final and not appealable under state law.[3] Whether an order is final and appealable is judged by its function and substance, rather than any "magic language."[4]

In this case, the return of the case to the ALJ did not require any further proceedings in that forum, nor was the ALJ ordered to reconsider any issues under a different standard than previously applied.[5] The superior court merely reversed the ALJ's decision on legal issues. Under these circumstances, the superior court's order was final and appealable under OCGA § 5-6-35 (a).

2. Next, the challengers assert that the Court of Appeals erred when it concluded that the burden of proof before the ALJ rested on the challengers. The applicable Georgia anti-degradation regulations state that "the State [has] the power to authorize new developments [which degrade water quality], when it has been affirmatively demonstrated to the State that a change [in water quality] is justifiable to provide necessary social or economic development."[6] Thus, the party seeking a permit to degrade water quality bears the burden of proof before the EPD.

Under the Georgia Administrative Code, Administrative Rules of Procedure, rule 616-1-2-.07 (1) (b), however, the administrative party bears the burden of proof in all matters except "any party challenging the issuance . . . of a license who is not the licensee shall bear the burden." As the challengers' petition before the ALJ sought to challenge the propriety of the permit then held by Gwinnett County, the challengers had the burden of persuasion in that forum. Accordingly, the Court of Appeals was correct in holding that the burden upon the applicant to "affirmatively demonstrate" the propriety of the permit was applicable only before the EPD, and that once a permit was issued by the EPD, the burden shifted to the challenger to show that the permit was wrongfully issued.

3. Next, the challengers argue that the permit does not meet the substantive requirements under the anti-degradation rules, and that

---

[3] OCGA § 5-6-35 (a); *Ga. Pub. Svc. Comm. v. Campaign for a Prosperous Ga.*, 229 Ga. App. 28, 29 (1) (492 SE2d 916) (1997).

[4] *Dolinger v. Driver*, 269 Ga. 141, 142 (1) (498 SE2d 252) (1998).

[5] *Rogers v. State*, 276 Ga. 67, 69-70 (3) (575 SE2d 879) (2003); *Fairfax MK, Inc. v. City of Clarkston*, 274 Ga. 520, 523 (4) (555 SE2d 722) (2001).

[6] Ga. Comp. R. & Regs. r. 391-3-6-.03 (2) (b).

the ALJ therefore improperly affirmed the permit. The factual findings of the ALJ confirm that Gwinnett County's permit to discharge forty million gallons of treated wastewater every day into Lake Lanier will degrade the water quality in the lake. One of the central purposes of the Clean Water Act,[7] and the corresponding Georgia Water Quality Control Act,[8] is to prevent the unnecessary degradation of current water quality. Under the Georgia regulations, which mirror and incorporate the federal regulations, a permit that will degrade the high quality of water in Lake Lanier cannot be granted unless the applicant meets two substantive requirements under the anti-degradation rules.[9] First, the degradation of water quality is acceptable only when it is "justifiable to provide necessary social or economic development."[10] Second, such a permit must require the permittee to utilize the "highest and best practicable [level of treatment] under existing technology."[11] As these issues involve determinations of fact, the ALJ's decision must be affirmed where there is "any evidence" to support it.[12] We find that the ALJ's decision was supported by some evidence with respect to the first question, but that the ALJ's own factual conclusions show that it erred with respect to the second question.

(a) We affirm the ALJ's determination that the degradation was "justifiable to provide necessary social or economic development." The ALJ found that several economic and social benefits justified the issuance of the permit, including the following: the projected population growth in Gwinnett County would require additional wastewater capacity by the year 2005, and that continued growth would require the level of capacity provided by the permit sometime between 2010 and 2015; sufficient land was not available for land application of wastewater; there is a need to return water to the water system from which Gwinnett County draws its water supply; and the cycling of treated wastewater taken from the Chattahoochee River system and returned to that system would aid negotiations concerning an interstate compact regarding these waters. We conclude that there was some evidence to support these findings before the ALJ,

---

[7] 33 USC § 1251 (a) (Act intended to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters").

[8] OCGA § 12-5-21 (a) ("the water resources of the state shall be utilized prudently for the maximum benefit of the people, in order to restore and maintain a reasonable degree of purity in the waters of the state").

[9] Ga. Comp. R. & Regs. r. 391-3-6-.03 (2) (b).

[10] Id.

[11] Id.

[12] *Emory Univ. v. Levitas*, 260 Ga. 894, 898 (1) (401 SE2d 691) (1991).

and the superior court improperly reversed on that issue. Therefore, the Court of Appeals was correct in reversing the superior court on that issue.

(b) But the ALJ's own factual findings contradict its conclusion that the permit properly required Gwinnett County to utilize the "highest and best practicable [level of treatment] under existing technology."[13] The ALJ expressly concluded that "the actual amounts of pollutants currently being discharged by the Plant are below the levels set in the permit." Under the anti-degradation regulations, Gwinnett County may not be allowed to discharge water that is more polluted than it reasonably needs to be by virtue of the existing technology at the Hill Plant.

Nonetheless, the ALJ sanctioned this regulatory violation by reference to an "engineering safety buffer," ostensibly placed into the permit to protect Gwinnett County from fines associated with permit violations. But Gwinnett County has shown no evidence that it would be impracticable or unfeasible for it to utilize the full technology available at the Hill plant to clean the water before discharging it into the lake.[14] Furthermore, the regulation does not cite the "convenience of the parties" or "fear of regulatory violations" as justifications for greater water degradation. Allowing wholesale water quality degradation is not justified by the concern that Gwinnett County might face an occasional fine for a permit violation. Whether Gwinnett County can feasibly and practicably discharge cleaner water is the only issue. Whether the County might be fined by the EPD for some speculative future violation of the permit is only relevant if it shows some realistic obstacle to the achievement of the higher standard.

Accordingly, the Court of Appeals erred in reversing the superior court's determination that the permit did not require the highest and best level of treatment practicable.

4. The challengers also argue that the EPD failed to comply with the required public notice and comment rules. Agency actions, such as the issuance of the permit in this case, undergo a public notice and comment period to provide the public with the opportunity for meaningful participation in important agency decisions.[15] Under the Georgia and federal regulations, the discharge point is an element of the

---

[13] Ga. Comp. R. & Regs. r. 391-3-6-.03 (2) (b).

[14] The challengers in this case also presented undisputed evidence that for the past fifteen years, the Upper Occoquan Sewer Authority has employed similar technology as that available at the Hill Plant to comply with permit limits that are much lower than that required by Gwinnett County's permit. That the Hill Plant has the capability of achieving these lower limits is indisputable. That it is feasible to do so over an extended period of time is demonstrated by the history of the Upper Occoquan Plant.

[15] See OCGA § 12-5-30 (a); Ga. Comp. R. & Regs. r. 391-3-6-.06 (7) (b); *Natural Resources Defense Council v. EPA*, 859 F2d 156, 175 (D.C. Cir. 1988).

permit that the agency must submit to the notice and comment process.[16] "The public is precluded from a meaningful opportunity to participate in the comment process if an agency makes available one version of a guideline, . . . provides the opportunity to comment on that version, and then adopts a completely different approach in its final guideline, without having provided an opportunity to the public to comment on the adopted version."[17]

In this case, the EPD submitted a draft permit for public notice and comment that showed the discharge point to be over 145 feet below the surface of the lake in the area of Buford Dam. After the comment period ended, however, the EPD issued a final permit containing a different discharge point, one that was only 35 feet below the surface and in a different ebayment more than a mile from Buford Dam. The final discharge point has never been subjected to public notice and comment, and the challengers argue that it should have been.

It is unclear from the record whether or not the changes in the final permit were significant enough to require a renewed public notice and comment period, because the ALJ summarily disposed of this issue and thus deprived the challengers of the opportunity to present evidence supporting their claim that the changes in the permit were significant enough to require a renewed public notice and comment period. Because those issues involve a factual determination, the ALJ should have held an evidentiary hearing on the issue. Additionally, as the superior court correctly noted, the ALJ utilized an improper legal standard when it granted summary judgment to the EPD on the basis that the draft permit "had included the name of the [receiving] body of water in the fact sheet attached with the draft permit." Under that reasoning, the public notice and comment requirement would be satisfied even if the final permit authorized a discharge more than forty miles from the one submitted to the notice and comment process, so long as it still discharged into Lake Lanier. Plainly, more specificity is required if the public is to have any meaningful opportunity to participate in these decisions. Because the ALJ improperly granted summary judgment on this issue, the Court of Appeals erred in reversing the superior court's determination of that issue.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Hines, J., who dissents.*

---

[16] Ga. Comp. R. & Regs. r. 391-3-6-.06 (7) (b) (1) (v) ("[t]he contents of the public notice will be in accordance with Federal Regulations, 40 CFR § 124.10 (d)"); 40 CFR § 124.10 (d) ("all public notices . . . shall contain the following minimum information: . . . a general description of the location of each existing or proposed discharge point. . . .").

[17] *American Lands Alliance v. Norton*, 242 FSupp.2d 1, 14-15 (D. D.C. 2003).

HINES, Justice, dissenting.

Because the majority opinion violates standards of judicial review and steps beyond the proper role of the judiciary, I respectfully dissent.

The majority states that the administrative law judge ("ALJ") erred in finding that the level of treatment required in the permit is "the highest and best practicable under existing technology" under Ga. Comp. R. & Regs. r. 391-3-6-.03 (2) (b). But in doing so, the majority not only substitutes its own judgment for that of the ALJ, but effectively rewrites the regulation to read "the highest and best *possible*" rather than "the highest and best *practicable*." It is not this Court's function to perform either task.

The ALJ's review of the record and of the Environmental Protection Division's ("EPD") decision is made de novo. Ga. Comp. R. & Regs. r. 616-1-2-.21. Under the proper standard of review, the question for a reviewing court is whether there is any evidence presented to the ALJ to support the ALJ's findings. See *Ga. Dept. of Community Health v. Freels*, 258 Ga. App. 446, 447 (576 SE2d 2) (2002), citing *Emory Univ. v. Levitas*, 260 Ga. 894, 898 (1) (401 SE2d 691) (1991). Unfortunately, the majority has turned this standard on its head; it seeks, and states that it finds, some evidence to support a finding *contrary* to that of the ALJ. But, the question is not if any evidence *opposes* the ALJ's decision, but whether any evidence *supports* it. What the majority has done is simply substitute its own judgment for that of the ALJ.

This Court's review should determine whether the evidence supported the ALJ's finding that the technology employed was the highest and best "practicable." Ga. Comp. R. & Regs. r. 391-3-6-.03 (2) (b). By focusing upon the fact that the effluent levels the plant *can* achieve are superior to those required under the permit, the majority ignores that role. Essentially, the majority holds that no practicable engineering safety buffer can ever be allowed under a discharge permit; the most stringent level that can be possibly achieved is the only one that may be set forth in the permit. This not only departs from this Court's proper role, but by completely ignoring the regulatory requirement that the permit's level of treatment is "the highest and best practicable under existing technology," effectively rewrites the regulation.

The majority also writes new language into the statutes and regulations concerning the public notice and comment procedure. It is disingenuous of the majority to hold that the ALJ erred in not providing an opportunity for the challengers to show that a "renewed public notice and comment period" was required; there can be no such error because there is no avenue for providing such an opportunity. The majority simply creates its "renewed public notice and comment

period" out of whole cloth. There is absolutely nothing in the statutes or regulations that even suggests such a process. Rather, the procedural requirements concerning public notice and comment enacted by the proper bodies state otherwise. When a proposed permit is subjected to public comment, EPD determines based on those comments whether any change to the proposed permit is necessary, and if so, those changes are incorporated into any permit issued. See OCGA § 12-5-30; Ga. Comp. R. & Regs. r. 391-3-6-.06 (7). If EPD wishes to issue a final permit that differs from a draft permit, the proper requirements are set forth in 40 CFR § 124.17 (a) (1); in such a circumstance, EPD is required to specify in the final permit "which provisions, if any, of the draft permit have been changed in the final permit." See also Ga. Comp. R. & Regs. r. 391-3-6-.06 (7) (b) (1) (iv). Not only does nothing in the statutes or regulations *require* starting the public notice and comment period anew if EPD has changed the draft permit, but nothing can be read even to *authorize* such a possibility. The majority opinion simply creates this new procedure because it wishes it to exist.

The fact that the discharge point shown in the final permit has changed from that shown in the draft permit is of no moment. Under the regulations, a change in the *specific* discharge point does not transform the draft permit into some "new" proposed permit. Rather, under 40 CFR § 124.10 (d) (vii), the public notice of a proposed permit must include "a *general* description of the location of each existing or proposed discharge point and *the name of the receiving water. . . ."* (Emphasis supplied.) There is no requirement of any designation of a discharge point other than the "general" location.

In embracing its new requirement of a "renewed public notice and comment period," the majority apparently believes it is advancing public policy considerations. But, there is no discussion or analysis of contrary policy considerations, such as the effect of such a requirement on decision-making bodies; if the permitting process must be started anew whenever an administrative agency makes a change to a proposed permit, the agency could be disinclined to make changes to permits for needed projects, defeating the very purpose of the public notice and comment process. See *Intl. Harvester Co. v. Ruckelshaus*, 478 F2d 615, 632, n. 51 (D.C. Cir. 1973). Of course, the declaration of such policy is best left to the General Assembly. See *Etkind v. Suarez*, 271 Ga. 352, 358 (5) (519 SE2d 210) (1999).

Further, in creating its new regulation, the majority has not even given guidance to the ALJ or other judicial bodies, as to how to determine whether a change in a permit warrants this new "renewed public notice and comment period." In this case, the ALJ is instructed to hold an evidentiary hearing concerning the "significance" of the change, but to what end and under what standard? The ALJ cannot

look to the existing regulations or statutes for guidance, for this procedure does not exist there, nor will it find guidance from this Court's opinion.

In any event, the judiciary is ill equipped to create regulations for the granting of a discharge permit and should not usurp that role.

DECIDED NOVEMBER 23, 2004.

Smith, Gambrell & Russell, Stephen E. O'Day, Andrew M. Thompson, Justine I. Thompson, for appellants.

Thurbert E. Baker, Attorney General, Issac Byrd, Deputy Attorney General, William R. Phillips, John E. Hennelly, Assistant Attorneys General, Alston & Bird, Lee A. DeHihns III, Daniel N. Esrey, William B. Carver, for appellees.

D. Lee Biola, Andrew, Merritt, Reilly & Smith, Paul E. Andrew, Clyde Y. Morris, Jr., Harry L. Cashin, Jr., Mary M. Asbill, amici curiae.