RENDERED: JUNE 15, 2006
AS MODIFIED: JUNE 21, 2007
TO BE PUBLISHED

# $\mathscr{S}$upreme $\mathfrak{C}$ourt of $\mathfrak{K}$entucky FINAL

## 2005-SC-0712-MR

DATE 6-21-07 Ellla Growth, D.C.

THOMAS C. BOWLING                                                          APPELLANT

V.
ON APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE MARY C. NOBLE, JUDGE
1990-CR-0363

COMMONWEALTH OF KENTUCKY                                     APPELLEE

## OPINION OF THE COURT BY JUSTICE JOHNSTONE

### AFFIRMING

Appellant, Thomas C. Bowling, appeals from the Fayette Circuit Court's denial of his motion for relief pursuant to CR 60.02 and CR 60.03. Bowling's motion claimed that the United States Supreme Court's recent decision in Roper v.Simmons, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), and the Eighth Amendment's proscription against cruel and unusual punishment prohibit the execution of individuals with the mental age of a juvenile. Bowling also argued that he was entitled to a new sentencing hearing due to "the increased mitigating value of functioning at the mental level of a juvenile" resulting from Roper's prohibition of executing juveniles.

### Prior Procedural History

In 1990, Bowling was convicted in the Fayette Circuit Court for the murders of Edward and Ernestine Earley, and the assault of their two-year-old child. Bowling was sentenced to death for each of the two murders. His convictions and sentences were affirmed on direct appeal. Bowling v. Commonwealth, 873 S.W.2d 175 (Ky. 1993), cert.

denied, 513 U.S. 862, 115 S. Ct. 176, 130 L. Ed. 2d 112 (1994). His RCr 11.42 motion was denied and that decision was also affirmed on appeal. Bowling v. Commonwealth, 981 S.W.2d 545 (Ky.1998), cert. denied, 527 U.S. 1026, 119 S. Ct. 2375, 144 L. Ed. 2d 778 (1999). His petition in federal district court for a writ of habeas corpus, 28 U.S.C. § 2254, was denied, Bowling v. Parker, 138 F. Supp. 2d 821 (E.D. Ky. 2001), and that decision was affirmed on appeal, Bowling v. Parker, 344 F.3d 487 (6th Cir. 2003), cert. denied sub nom., Bowling v. Haeberlin, 543 U.S. 842, 125 S. Ct. 281, 160 L. Ed. 2d 68 (2004), thus exhausting all of his conventional avenues of appeal. The Governor of Kentucky signed a death warrant scheduling Bowling's execution for November 30, 2004. KRS 431.240(4). However, both this Court and the Franklin Circuit Court issued orders staying the execution pending resolution of Bowling's challenge to Kentucky's method of lethal injection and his petition to vacate his death sentence based on mental retardation.

In Bowling v. Commonwealth, 163 S.W.3d 361 (Ky. 2005), cert. denied, ___ U.S. ___, 126 S. Ct. 652, 163 L. Ed. 2d 528 (2005), this Court upheld the trial court's denial of Bowling's CR 60.02/CR 60.03 motion based on mental retardation. Specifically, Bowling relied upon the United States Supreme Court's ruling in Atkins v. Virginia, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002), that the Eighth Amendment's proscription against cruel and unusual punishment "places a substantive restriction on the State's power to take the life of a mentally retarded offender." Id. at 321, 122 S. Ct. at 2252, 153 L. Ed. 2d at 350; Bowling, 163 S.W.3d at 366.

Noting that at the time of Atkins, Kentucky already had in effect a statute affording the same protection created by Atkins, KRS 532.140,[1] we held that Atkins was only retroactive to any condemned mentally retarded offender tried prior to the effective date of KRS 532.140. Bowling, 163 S.W.3d at 371. Because Bowling was tried after the effective date of the exemption statutes and had not raised the mental retardation issue at trial, he was held to have procedurally defaulted the issue:

> The Commonwealth did not prevent Appellant from presenting his mental retardation claim; he simply did not assert it at his trial or in his RCr 11.42 motion. Kentucky's exemption statute, KRS 532.140(1), was enacted effective July 13, 1990. Appellant's trial began on December 10, 1990. During the interim, Appellant was examined by two psychologists, one appointed by the trial court and the other selected by his attorneys. Each psychologist administered a separate IQ test, the results of which measured Appellant's IQ at 86 and 87, respectively. Thus, Appellant was afforded both the opportunity to assert his mental retardation claim and the expert witnesses necessary to prove it (if it was provable). He chose not to assert the claim at trial and thereby waived it. Accord Winston v. Commonwealth, 268 Va. 564, 604 S.E.2d 21, 51 (2004) ( "Winston's remaining claims concerning the subject of mental retardation are waived because he deliberately declined to raise a claim of mental retardation under the statutory provisions that apply to him and his trial."). Compare Head v. Hill, 277 Ga. 255, 587 S.E.2d 613, 620 (2003) (defendant could have litigated the issue of his alleged mental retardation at trial but chose not to do so, thus, he was not denied the right to litigate the issue; he had such a right and waived it); with Rogers v. State, 276 Ga. 67, 575 S.E.2d 879, 880 (2003) (defendant who was tried before effective date of mental retardation exemption statute could not be held to have waived claim to exemption).

Id. at 371-72.

---

[1] KRS 532.140(1), enacted July 13, 1990, provides: "[N]o offender who has been determined to be a seriously mentally retarded offender under the provisions of KRS 532.135, shall be subject to execution. The same procedure as required in KRS 532.025 and 532.030 shall be utilized in determining the sentence of the seriously mentally retarded offender under the provisions of KRS 532.135 and KRS 532.140."

Bowling thereafter informed the Sixth Circuit that he had exhausted his mental retardation claims in state court. On September 2, 2005, a three-judge panel of the Sixth Circuit denied Bowling's motion for leave to file a successive habeas corpus petition to re-litigate the mental retardation claim. The Court further upheld the U.S. District Court's order denying Bowling's FRCP 60(b) motion to reopen his previously ruled-upon habeas corpus petition, and concluded that the FRCP 60(b) motion was the functional equivalent to a successive habeas petition. In Re: Bowling, 422 F.3d 434 (6th Cir. 2005). On December 2, 2005, the Sixth Circuit denied Bowling's motion for leave to file a petition for an en banc rehearing of his mental retardation claim.

### Current Collateral Attack

On June 7, 2005, Bowling filed a motion in the Fayette Circuit Court to vacate his death sentence based upon "juvenile mental age," citing CR 60.02, CR 60.03, and Roper v. Simmons, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005). Relying upon an excerpt from his Perry County elementary school record and an affidavit from his mother, both of which were filed in the earlier mental retardation claim, as well as an additional affidavit from his son, Bowling alleged that he mentally functions at a level equivalent to an eleven-year-old child. Bowling also moved the trial court for funds to hire an expert on juvenile age.

The Commonwealth responded, in part, that Bowling's claim was not filed in a timely manner and was barred as a successive collateral attack. The Commonwealth cited to our prior decision wherein we held that Bowling was not entitled to relief based on his mental retardation claim because he had "not alleged an error that was unknown and could not have been known to him by the exercise of reasonable diligence at the

-4-

time of his trial, RCr 11.42 motion, or [prior] petition for habeas corpus." Bowling v. Commonwealth, 163 S.W.3d at 366. Since Roper v. Simmons was pending in the United States Supreme Court at the time Bowling filed his prior CR 60.02 motion based on mental retardation, the Commonwealth argued that he could have raised the juvenile mental age claim at that time.

Following a hearing, the trial court denied both motions. However, with respect to the procedural bar issue, the Court noted:

> The Court finds that the motion is timely if the Movant is entitled to a defense based on juvenile mental age. As Justice Keller wrote in Bowling v. Commonwealth, 2004-SC-0880-MR:
>
> > If the issue of an offender's age had not been presented or addressed previously by the trial court, no one, at least hopefully no one, would seriously argue that the issue was waived and could not be presented later if evidence, or a reasonable inference from the evidence, became available that showed the offender was less than sixteen at the time of the offense.
> >
> > Thus, if mental age is equivalent to age in years as a defense, Bowling is entitled to go forward.

The trial court nonetheless found that Bowling failed to present evidence sufficient for the court to determine the scientific validity of "mental age."

However, in August 2005, Bowling filed a motion to reconsider the trial court's order under CR 59.05. On August 19, 2005, the trial court heard oral argument and thereafter passed the motion for a two-week period to permit the parties to further brief the issues. The trial court held a second oral argument on August 26, 2005. At the conclusion of such, the trial entered an order granting Bowling's CR 59.05 motion to reconsider, but denying his motion for relief. The court opined:

> The Roper Court established age 18 as the categorical cut-off age because "society draws the line for many purposes between

-5-

childhood and adulthood" at that age.

> However, the majority in <u>Roper</u> made it clear that this is a bright line demarcation rather than a case-by-case determination. The Court recognized that some underage 18 "have already attained a level of maturity some adults will never reach." Nonetheless, being under <u>chronological age</u> 18 would make such a youth eligible for the death penalty prohibition. Conversely, the Court recognized that the "qualities that distinguish juveniles from adults do not disappear when an individual turns 18." By this statement, the Court made it clear that remaining "youthful" past chronological age 18 would not invoke the prohibition. "Mental age" less than 18 means no more than remaining youthful past chronological age18.There is thus no analytical basis to extend the holding of <u>Roper</u> to cover a juvenile mental age.

(Emphasis in original).

Appellant now appeals to this Court as a matter of right. Ky. Const. § 110(2)(b); <u>Skaggs v. Commonwealth</u>, 803 S.W.2d 573 (Ky. 1990), <u>vacated on other grounds</u>, <u>Skaggs v. Parker</u>, 235 F.3d 261 (6th Cir. 2000).

### <u>Roper v. Simmons</u>

The United States Supreme Court's recent decision in <u>Roper v. Simmons</u> declared it unconstitutional under the Eighth Amendment for a state to execute any individual who was under the age of eighteen (18) at the time of the offense. Noting that a majority of states have rejected the imposition of the death penalty on juveniles under 18, the Court found evidence sufficient to demonstrate a national consensus. "The evidence of national consensus against the death penalty for juveniles is similar, and in some respects parallel, to the evidence <u>Atkins</u> held sufficient to demonstrate a national consensus against the death penalty for the mentally retarded." 543 U.S. at 564, 125 S.Ct. at 1192, 161 L.Ed.2d at 18. In justifying the prohibition of the death penalty on those less than 18 years of age, the Court explained:

Three general differences between juveniles under 18 and adults demonstrate that juvenile offenders cannot with reliability be classified among the worst offenders. First, as any parent knows and as the scientific and sociological studies respondent and his amici cite tend to confirm, "[a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions." [Johnson v. Texas, 509 U.S. 350, 367, 113 S. Ct. 2658]; see also [Eddings v. Oklahoma, 455 U.S. 104, 115-116, 102 S. Ct. 869] ("Even the normal 16-year-old customarily lacks the maturity of an adult"). . . . In recognition of the comparative immaturity and irresponsibility of juveniles, almost every State prohibits those under 18 years of age from voting, serving on juries, or marrying without parental consent. . . .

The second area of difference is that juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure. Eddings, supra, at 115, 102 S. Ct. 869 ("[Y]outh is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage"). This is explained in part by the prevailing circumstance that juveniles have less control, or less experience with control, over their own environment. See Steinberg & Scott, Less Guilty by Reason of Adolescence: Developmental Immaturity, Diminished Responsibility, and the Juvenile Death Penalty, 58 Am. Psychologist 1009, 1014 (2003) (hereinafter Steinberg & Scott) ("[A]s legal minors, [juveniles] lack the freedom that adults have to extricate themselves from a criminogenic setting").

The third broad difference is that the character of a juvenile is not as well formed as that of an adult. The personality traits of juveniles are more transitory, less fixed. See generally E. Erikson, Identity: Youth and Crisis (1968).

These differences render suspect any conclusion that a juvenile falls among the worst offenders. The susceptibility of juveniles to immature and irresponsible behavior means "their irresponsible conduct is not as morally reprehensible as that of an adult." Thompson, supra, at 835, 108 S.Ct. 2687 (plurality opinion). . . . The reality that juveniles still struggle to define their identity means it is less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character. From a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies

-7-

will be reformed. Indeed, "[t]he relevance of youth as a mitigating factor derives from the fact that the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside." Johnson, supra, at 368, 113 S. Ct. 2658; see also Steinberg & Scott 1014 ("For most teens, [risky or antisocial] behaviors are fleeting; they cease with maturity as individual identity becomes settled. Only a relatively small proportion of adolescents who experiment in risky or illegal activities develop entrenched patterns of problem behavior that persist into adulthood").

In Thompson, a plurality of the Court recognized the import of these characteristics with respect to juveniles under 16, and relied on them to hold that the Eighth Amendment prohibited the imposition of the death penalty on juveniles below that age. 487 U.S., at 833-838, 108 S. Ct. 2687. We conclude the same reasoning applies to all juvenile offenders under 18.

Roper, 543 U.S. at 569-72, 125 S. Ct. at 1195-96, 161 L. Ed. 2d at 21-23.

### "Juvenile Mental Age"

Bowling argues that the Roper decision must be interpreted as prohibiting the execution of not only those offenders whose chronological age is below eighteen, but also those offenders whose mental age is below eighteen. Bowling contends that unlike the Supreme Court's prior decisions dealing with the juvenile death penalty, Roper defines "juvenile" and "youthful person" in terms of the mental development and impairments that are inherent in anyone who functions as a juvenile, not just those who are chronologically juveniles. See Thompson v. Oklahoma, 487 U.S. 815, 108 S. Ct. 2687, 101 L. Ed. 2d 702 (1988) (plurality opinion prohibiting imposition of death penalty on any juvenile under the chronological age of sixteen at the time of offense). See also Stanford v. Kentucky, 492 U.S. 361, 109 S. Ct. 2969, 106 L. Ed. 2d 306 (1989); Eddings v. Oklahoma, 455 U.S. 104, 102 S. Ct. 869, 71 L. Ed. 2d 1 (1982).

Bowling points out that the Roper decision focuses on the immaturity, irresponsibility, and susceptibility to negative influences inherent in juveniles, and how

such factors prevent the only recognized goals of the death penalty – retribution and deterrence of prospective offenders[2] - from being satisfied. Thus, Bowling concludes that because such rationale has no relation to a person's chronological age, but only to his or her mental age, the Court was clearly imposing a broad restriction against the execution of any offender who mentally functions below the level of an average chronological eighteen year old.

We do not necessarily disagree that, in theory, the broad concepts espoused by the Supreme Court could pertain to those who function at the mental level of a juvenile. To be sure, the Roper Court recognized that there are adults who have the mental abilities of a juvenile, as well as those juveniles who function at a level far beyond their years. For that reason, however, the Court established a bright line rule:

> Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By the same token, some under 18 have already attained a level of maturity some adults will never reach. For the reasons we have discussed, however, a line must be drawn. The plurality opinion in Thompson drew the line at 16. In the intervening years the Thompson plurality's conclusion that offenders under 16 may not be executed has not been challenged. The logic of Thompson extends to those who are under 18. The age of 18 is the point where society draws the line for many purposes between childhood and adulthood. It is, we conclude, the age at which the line for death eligibility ought to rest.

Roper, 543 U.S. at 574, 125 S. Ct. at 1197-98, 161 L. Ed. 2d at 24-25. The plain language of Roper compels the conclusion that its prohibition is limited to "the

---

[2] "There are two distinct social purposes served by the death penalty: 'retribution and deterrence of capital crimes by prospective offenders.'" Roper, 543 U.S. at 571, 125 S. Ct. at 1196, 161 L. Ed. 2d at 23. (Quoting Atkins, 536 U.S. at 319, 122 S. Ct. at 2242, 153 L. Ed. 2d at 349).

execution of an offender for any crime committed before his 18th birthday. . . ." Id. at 588, 125 S. Ct. at 1206, 161 L. Ed. 2d at 38. (O'Connor, J. dissenting).

As the Commonwealth notes, the concept of juvenile mental age as a basis to preclude the death penalty was discussed by Justice O'Conner in Penry v. Lynaugh, 492 U.S. 302, 109 S. Ct. 2934, 106 L. Ed. 2d 256 (1989), abrogated by Atkins, supra:

> Penry urges us to rely on the concept of "mental age," and to hold that execution of any person with a mental age of seven or below would constitute cruel and unusual punishment. . . . Mental age is "calculated as the chronological age of nonretarded children whose average IQ test performance is equivalent to that of the individual with mental retardation". . . . See D. Wechsler, The Measurement and Appraisal of Adult Intelligence 24-25 (4th ed. 1958). . . . [T]he "mental age" concept, irrespective of its intuitive appeal, is problematic in several respects. As the AAMR acknowledges, "[t]he equivalence between nonretarded children and retarded adults is, of course, imprecise. . . ." The "mental age" concept may underestimate the life experiences of retarded adults, while it may overestimate the ability of retarded adults to use logic and foresight to solve problems. The mental age concept has other limitations as well. Beyond the chronological age of 15 or 16, the mean scores on most intelligence tests cease to increase significantly with age. Wechsler 26. As a result, "[t]he average mental age of the average 20 year old is not 20 but 15 years." Id., at 27. See also In re Ramon M., 22 Cal. 3d 419, 429, 149 Cal. Rptr. 387, 394, 584 P.2d 524, 531 (1978) ("[T]he 'mental age' of the average adult under present norms is approximately 16 years and 8 months"). Not surprisingly, courts have long been reluctant to rely on the concept of mental age as a basis for exculpating a defendant from criminal responsibility. See, e.g., In re Ramon M., supra, 22 Cal. 3d at 429, 149 Cal. Rptr. at 394, 584 P.2d at 531; State v. Schilling, 95 N.J.L. 145, 148, 112 A. 400, 402 (1920); People v. Marquis, 344 Ill. 261, 267, 176 N.E. 314, 316 (1931); Chriswell v. State, 171 Ark. 255, 259, 283 S.W. 981, 983 (1926). Cf. Pickett v. State, 37 Ala. App. 410, 71 So.2d 102, 107 (1954). See generally Ellis & Luckasson, 53 Geo. Wash. L. Rev., at 435. Moreover, reliance on mental age to measure the capabilities of a retarded person for purposes of the Eighth Amendment could have a disempowering effect if applied in other areas of the law. Thus, on that premise, a mildly mentally retarded person could be denied the opportunity to enter into contracts or to marry by virtue of the fact that he had a "mental age" of a young child. In light of the inherent problems with the mental age concept, and in the absence

> of better evidence of a national consensus against execution of the retarded, mental age should not be adopted as a line-drawing principle in our Eighth Amendment jurisprudence.

Penry, 492 U.S. at 339-40, 109 S. Ct. at 2957-58, 106 L. Ed. 2d at 291-92.

While the other members of the Court did not join Justice O'Conner's opinion with respect to "mental age," none explicitly rejected it. Nor has the Court since Penry considered such a theory. Nevertheless, Justice O'Conner's discussion certainly belies Bowling's claim that the Roper Court intended for the definition of "juvenile" to include those who mentally function at a juvenile level. There simply is no language to support such a conclusion. The Court was unquestionably well-versed in the concept of mental age and would have explicitly adopted mental age as a criterion had it wished to do so.

Bowling has not cited any published authority prohibiting the death penalty based upon "juvenile mental age." Nor has Bowling demonstrated a national consensus that mental age should be a criterion by which to exclude the death penalty. Without question, the Supreme Court has been presented with and has considered the concept of mental age. Penry. Thus, we conclude that Roper v. Simmons only prohibits the execution of those offenders whose chronological age was below eighteen at the time of the commission of the offense. See also Hill v. State, 921 So. 2d 579, 584 (Fla. 2006).

## Procedural Default

We believe it necessary to point out that even if this Court were to have concluded that Roper prohibits the execution of "mental juveniles," the result herein would be no different. As we noted in Bowling v. Commonwealth, a decision recognizing a new constitutional right would not be retroactively applied if the state in which the conviction was obtained had in effect at the time of the condemned person's

-11-

trial a statute affording the same right. 163 S.W.3d at 372. KRS 640.040, enacted in July 1989 and effective at the time of Bowling's 1990 trial, provides in relevant part:

> (1) No youthful offender who has been convicted of a capital offense who was under the age of sixteen (16) years at the time of the commission of the offense shall be sentenced to capital punishment.

Thus, at the time of his trial Kentucky had in effect a statute that prohibited the execution of an offender under the age of sixteen. As such, Bowling's claim that execution is prohibited because he functions at the level of an eleven-year-old child could have been asserted at trial, in his RCr 11.42 motion, or his prior CR 60.02 motion. In other words, as it would have applied to his claim, Roper v. Simmons created no greater protection than he could have asserted under the statute. For this reason, the same rationale espoused in Bowling v. Commonwealth that supported a finding that Bowling procedurally defaulted his mental retardation claim applies with equal force to support a finding that his current claim, even if viable, would have been procedurally defaulted as well. Id. at 371-72.

## New Capital Sentencing Trial

Finally, Bowling argues that in light of Roper v. Simmons, he is entitled to a new sentencing trial where a jury can consider "the mitigating value of juvenile mental age in light of the substantive restriction against executing juveniles that did not exist in Kentucky until March 1, 2005." It is his belief that that there is a reasonable probability that at least one juror would have viewed the mitigating evidence differently had he or she known that juveniles could not be executed. Bowling's argument is wholly without merit.

-12-

As we have previously noted, Kentucky has prohibited the imposition of capital punishment on juveniles who were under the age of sixteen at the time of offense since the enactment of KRS 640.040 in July 1987. As Bowling was tried in 1990, defense counsel was certainly able to make the same arguments in mitigation that he now seeks to make.

Accordingly, the order of the Fayette Circuit Court denying Bowling relief under CR 60.02 and CR 60.03 is affirmed.

Further, Bowling's motion to strike documents improperly included in the record on appeal is denied as moot.

Lambert, C.J.; Cooper, Graves, Scott, and Wintersheimer, JJ., concur. Roach, J., not sitting.


COUNSEL FOR APPELLANT:

Susan Jackson Balliet
David M. Barron
Assistant Public Advocates
Department of Public Advocacy
100 Fair Oaks Lane, Suite 301
Frankfort, KY 40601

COUNSEL FOR APPELLEE:

Gregory D. Stumbo
Attorney General of Kentucky

Ian G. Sonego
Assistant Attorney General
Office of Attorney General
Criminal Appellate Division
1024 Capital Center Drive
Frankfort, KY 40601-8204

# Supreme Court of Kentucky

2005-SC-000712-MR

THOMAS C. BOWLING          APPELLANT

ON APPEAL FROM FAYETTE CIRCUIT COURT
V.          HONORABLE MARY C. NOBLE, JUDGE
1990-CR-0363

COMMONWEALTH OF KENTUCKY          APPELLEE

## ORDER DENYING PETITION FOR REHEARING

The petition for rehearing is denied. The Opinion of the Court rendered on June 15, 2006, is hereby modified on its face by substitution of the attached pages 1 and 6 through 13 in lieu of the original page 1 and pages 6 through 14.

All concur, except Noble, J., not sitting.

ENTERED: June 21, 2007.

_____
CHIEF JUSTICE